### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| LUTHER SANDERS and RANDY BEST, Individually and On Behalf of Others Similarly Situated, | ) ) ) | |
| | ) | Case No. 3:16-cv-01093-S |
| Plaintiffs, | ) | Judge Karen Gren Scholer |
| | ) | |
| v. | ) | |
| | ) | |
| LATSHAW DRILLING COMPANY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

---

## DEFENDANT LATSHAW DRILLING COMPANY, LLC'S MOTION TO DECERTIFY THE COLLECTIVE ACTION AND BRIEF IN SUPPORT

---

Madalene A. B. Witterholt
CROWE & DUNLEVY, P.C.
321 S. Boston Ave., Suite 500
Tulsa, Oklahoma 74103
Telephone: 918-592-9800
Facsimile:  918-599-6325
Email: m.witterholt@crowedunlevy.com


-and-

Kevin M. Duddlesten, TX Bar #00793644
McGUIRE WOODS, LLP
2000 McKinney Avenue, Suite #1400
Dallas, Texas 75201
Tel: 214-932-6419
Facsimile: 214-932-6499
Email: kduddlesten@mcguirewoods.com
**ATTORNEYS FOR DEFENDANT,**
**LATSHAW DRILLING COMPANY, LLC**

## TABLE OF CONTENTS

INTRODUCTION - THE PARTIES AND CLAIMS ................................................................... 1

SUMMARY OF ARGUMENT ............................................................................................. 2

FACTUAL BACKGROUND ............................................................................................... 5

ARGUMENT AND AUTHORITY ..................................................................................... 14

I.    Plaintiffs' Stringent Burden Of Proof ............................................................. 14

II.   Plaintiffs' Disparate Factual and Employment Settings Require Decertification of the Collective Action. .............................................................................................. 15

      A. Job Duties .................................................................................................. 15

      B. Hours ......................................................................................................... 19

      C. Named Plaintiffs are not representative of opt-ins ..................................... 21

III.  Individualized Defenses Confirm Collective Treatment Is Not Possible. ........................ 22

IV.   Continued Collective Treatment Would Be Unmanageable, Unduly Burdensome and Unfair. ..................................................................................................................... 24

CONCLUSION ............................................................................................................... 25

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Aguirre v. SBC Communications, Inc.*,
  2007 WL 772758, at \*14 (S.D. Tex. Mar. 12, 2007) ................................................................4

*Basco v. Wal-Mart Stores, Inc.*,
  2004 WL 1497709, Civ.A. 00-3184, \*8 (E.D. La. July 2, 2004) ...........................................21

*Briggins v. Elwood Tri, Inc.*,
  882 F. Supp. 2d 1256 (N.D. Ala. 2012) ................................................................................20

*Espenscheid v. DirectStat USA, LLC*,
  705 F.3d 770 (7th Cir. 2013) ..........................................................................................20, 24

*Green v. Harbor Freight Tools USA, Inc.*,
  888 F. Supp. 2d 1088, 1099 (D. Kan. 2012) .........................................................................14

*Harris v. Fee Transp. Services, Inc.*,
  slip op., 2006 WL 1994586, at \*4-5 (N.D. Tex. May 15, 2006) (J. Solis) ..............................4

*Hoffman v. LaRoche*,
  493 U.S. 165, 170 (1989) .........................................................................................................4

*Johnson v. Big Lots Stores, Inc.*,
  561 F. Supp. 2d 567, 578-79 (E.D. La. 2008) ............................................................... *passim*

*Lipnicki v. Meritage Homes Corp.*,
  2014 WL 5620603, \*1, \*3 (S.D. Tex. Nov. 4, 2014) ......................................................14, 15

*Mooney v. Aramco Servs. Co.*,
  54 F.3d 1207, 1214, n.8 (5th Cir. 1995) ....................................................................3, 14, 15

*Morisky v. Pub. Serv. Elec. & Gas Co.*,
  111 F. Supp. 2d 493, 499 (D.N.J. 2000) ...........................................................................3, 24

*Prickett v. DeKalb Cnty.*,
  349 F.3d 1294, 1297 (11th Cir.2003) ......................................................................................4

*Proctor v. Allsups Convenience Stores, Inc.*,
  250 F.R.D. 278, 280 (N.D. Tex. 2008) ...........................................................................14, 20

*Reyes v. Tex. EZPawn, L.P.*,
  2007 WL 101808, at \*2 (S.D. Tex. Jan. 8, 2007) ......................................................... *passim*

*Roussell v. Brinker Int'l, Inc.*,
   2008 WL 2714079, at *22 (S.D. Tex. July 9, 2008)................................................................24

*Sandoz v. Cingular Wireless, LLC*,
   553 F.3d 913, 919 (5th Cir.2008) .......................................................................................4

*Smith v. Heartland Automotive Srvcs., Inc.*,
   404 F. Supp. 2d 1144, 1152 (D. Minn. 2005) .........................................................................15

*Trinh v. J.P. Morgan Chase & Co.*,
   slip op. 2008 WL 1860161, at *4 n.2 (S.D Cal. April 22, 2008) ...............................................3

*Vanzzini v. Action Meat Distributors, Inc.*,
   995 F. Supp. 2d 703, 720 (S.D. Tex. 2014) .........................................................................15

*Wilson v. Navika Capital Group, LCC*,
   2014 WL 2534904, Civ. Action No. 4:10-CV-1569, * 6 (S.D. Tex. June 4,
   2014) ...............................................................................................................................20

**Statutes**

29 U.S.C. § 201 et seq.........................................................................................................1

29 U.S.C. §216.................................................................................................................15

29 U.S.C. § 216(b) .......................................................................................................1, 4

FLSA.......................................................................................................................1, 3, 4

New Mexico Minimum Wage Act.............................................................................................1

**Other Authorities**

29 C.F.R. § 541.2 .............................................................................................................14

29 C.F.R. §541.100, 21541.200, §541.600.............................................................................1

29 C.F.R. § 541.100(a)(2) ..................................................................................................22

29 C.F.R. § 541.200(a)(3) ..................................................................................................22

29 C.F.R. § 541.700(a).................................................................................................22, 23

29 C.F.R. § 541.700(b) .....................................................................................................22

Defendant Latshaw Drilling Company, LLC ("Latshaw") hereby moves to decertify this collective action and dismiss the opt-in Plaintiffs without prejudice.  In support hereof, Latshaw submits the following evidence and argument.

## INTRODUCTION - THE PARTIES AND CLAIMS

This Fair Labor Standards Act case, 29 U.S.C. § 201 et seq. ("FLSA"), was filed originally by Luther Sanders ("Sanders") and Randy Best ("Best") as the putative representatives of others in a collective action to recover unpaid overtime wages under § 16(b) of the FLSA, 29 U.S.C. § 216(b).[1] Specifically, Sanders and Best assert a cause of action on behalf of themselves and "those similarly situated" alleging they were misclassified as salaried employees.  They also claim that the failure to pay them overtime was in violation of the New Mexico Minimum Wage Act ("NMMWA") and are demanding damages. Finally, Best is claiming retaliatory discharge. During their employment at Latshaw, Sanders and Best (as well as the opt-in members of the putative class) were paid a salary and were classified as exempt from overtime pursuant to 29 U.S.C. §216(b), under the highly compensated employee exemption ("HCE"), the administrative exemption, and/or the executive exemption.  See 29 C.F.R. §541.100, 21541.200, §541.600.

On September 12, 2016, the Court granted Plaintiffs' uncontested motion for conditional class certification.[2] Notice and consent forms were mailed to thirty-six "salaried oilfield mechanical and electrical workers employed by Latshaw" from August 26, 2013 to September 2016.  Initially, eleven putative class members opted-in.[3] Three of the eleven have since opted-out,[4] leaving eight members of the putative class.  The class includes former Latshaw top-drive technicians, electricians and mechanics (collectively referred to as "Plaintiffs"):

---

[1] Plaintiffs' First Amended Complaint, Doc. 20.
[2] Order Granting Parties Agreed Motion for Conditional Certification, Doc. 25.
[3] Notices of Consent, Docs. 6, 23, 27, 28.
[4] Docs. 26, 30 and 43.

| Putative Class Member | Job Title | Dates of Employment |
|---|---|---|
| Best, Randy | Top-Drive Technician | 07/22/2013 to 03/31/2016 |
| Bonner, Kendall | Top-Drive Technician | 12/04/2013 to 01/10/2017 |
| Favor, Gary | Top-Drive Technician | 12/04/2013 to 10/09/2014 |
| Helenberger, James | Electrician | 07/15/2011 to 03/21/2016 |
| Hicks, Jason | Top-Drive Technician | 01/07/2010 to 11/04/2013 |
| Sanders, Luther | Top-Drive Technician | 07/31/2013 to 04/03/2016 |
| Spradlin, Shane | Top-Drive Technician | 04/01/2013 to 11/27/2014 |
| Stegall, Mike | Mechanic | 08/06/2013 to 04/18/2015 |

Top-drive technicians, electricians and mechanics are each separate work groups within Latshaw's maintenance department and each group reports to a different superintendent.[5]

Each of the Plaintiffs and their superintendents, as well as other Latshaw employees was deposed. Discovery closed on February 9, 2018.  This matter is currently set for trial on the Court's three-week docket beginning October 29, 2018.

## SUMMARY OF ARGUMENT

The Court should de-certify this collective action for three separate and independent reasons.  First and most fundamentally, Sanders and Best cannot satisfy their burden to show that they, and the opt-in Plaintiffs, are similarly situated. The factual and employment settings of Plaintiffs are disparate making certification of this action inappropriate. Plaintiffs have uniformly testified that **every day and every hour on the job was different.**[6]  Plaintiffs have further

---

[5] **LDC APPX 009-010** Exhibit 1 - Deposition of Amanda Reid taken June 8, 2017 ("Reid Depo 1") 54:22-55:5; **LDC APPX 021** Exhibit 2 - Deposition of Jean Gallander taken November 9, 2017 ("Gallander Depo") 44:1-7.

[6] **LDC APPX 054** Exhibit 3 - Deposition of Gary Favor taken December 21, 2017 ("Favor Depo") 162:11-18; **LDC APPX 057, 063** Exhibit 4 - Deposition of James Helenberger taken January 3, 2018 ("Helenberger Depo") 66:6-12 ("what was broken and where it was broken was ... ever changing"), 182:5 ("every single day was different"); **LDC APPX 074, 076** Exhibit 5 - Deposition of Shane Spradlin taken November 15, 2017 ("Spradlin Depo") 190:22 ("there's no typical hitch"), 195:19-23; **LDC APPX 080** Exhibit 6 - Deposition of Randy Best taken June 2, 2017, with excerpt from deposition exhibit 8 ("Best Depo") 41:9-15 ("Every day is a new day"); **LDC APPX 096** Exhibit 7 - Deposition of Jason Hicks taken October 11, 2017 ("Hicks Depo") 123:10-14.

testified that **their reported hours are not "truthful and honest"[7]** and admit that **they do not know how many overtime hours they worked**.[8]  Consequently, the resolution of any class member's misclassification claim will require the Court to conduct a fact intensive and highly-individualized inquiry into each class member's actual job duties, the time spent performing each duty and the relative importance of each duty.  This defeats the purpose of a collective action.

Moreover, Sanders and Best cannot show that they and the putative class "were together the victims of a single decision, policy or plan" that violates the FLSA.  *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214, n.8 (5th Cir. 1995). Plaintiffs allege that Latshaw's classification of maintenance workers as exempt is the policy or practice which unites the class and makes them similarly situated.  However, classification of a group of employees as exempt or non-exempt is not a "decision, policy, or plan" that supports class certification.  *See e.g. Trinh v. J.P. Morgan Chase & Co.,* slip op. 2008 WL 1860161, at *4 n.2 (S.D Cal. April 22, 2008) ("Because Plaintiffs' only allegation that Defendants engaged in a wrongful policy is that Defendants uniformly classified Plaintiffs and other loan officers as "exempt," the Court follows *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 499 (D.N.J. 2000) and other courts in finding that Plaintiffs have failed to make substantial allegations identifying an unlawful nationwide policy.")

Second, the individualized inquiries required in this case are further compounded by the fact that Plaintiffs' putative collective action implicates three exemptions to the requirements of

---

[7] **LDC APPX 099-101**  Exhibit 8 - Deposition of Kendall Bonner taken July 19, 2017, with excerpt from deposition exhibit 44A ("Bonner Depo") 19:11-19, 82:19-21 and 102:7-17; **LDC APPX 049-053** Ex.3 Favor Depo 139:14-17, 150:16-151:2 and 116:22-117:1; **LDC APPX 110** Exhibit 9 - Deposition of Luther Sanders taken July 18, 2017 ("Sanders Depo") 138:3-9; **LDC APPX 060-062** Ex. 4 Helenberger Depo 169:20-171:21; **LDC APPX 066-067, 069-072** Ex. 5 Spradlin Depo 27:23-28:8, 175:14, 169:6-170:1 and 174:21-175:3; **LDC APPX 087-089, 091** Ex. 6 Best Depo 171:2-13, 197:14-24, Depo. Ex. 8, at 1101 and 197:21-198:5.
[8] *See id.*

3

the FLSA and includes 8 employees in three distinct functional work groups, with entirely different and unique job duties and responsibilities and with different job titles. Misclassification cases involving employees with demonstrably different job duties are particularly unsuitable for class action treatment, even when – unlike the present case – only one position and exemption is at issue. *See e.g. Aguirre v. SBC Communications, Inc.*, 2007 WL 772758, at *14 (S.D. Tex. Mar. 12, 2007) (denying conditional certification of plaintiffs' misclassification case because a determination of liability would require a highly-individualized and fact specific inquiry on a plaintiff-by-plaintiff basis); *Harris v. Fee Transp. Services, Inc.,* slip op., 2006 WL 1994586, at *4-5 (N.D. Tex. May 15, 2006) (J. Solis) (same result, same reason).

Third, Section 216(b) collective actions are "intended to avoid multiple lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." *Sandoz v. Cingular Wireless, LLC,* 553 F.3d 913, 919 (5th Cir.2008) (quoting *Prickett v. DeKalb Cnty.,* 349 F.3d 1294, 1297 (11th Cir.2003)). "A collective action allows ... plaintiffs the advantage of lower individual costs to vindicate rights by pooling resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the alleged ... activity." *Hoffman v. LaRoche,* 493 U.S. 165, 170 (1989). However, a class that contains such disparity, as here, is not similarly situated and adjudication cannot fairly proceed on a collective basis.

Plaintiffs merely assert that the class is tied together by general allegations of misclassification, the fact that opt-ins served as salaried technicians, and that opt-ins claim to perform some nonexempt work during their workday. At this stage, however, these averments simply do not suffice. Because the Plaintiffs are not similarly situated, Latshaw will be unable to offer representative evidence in order to supports its exemptions. Rather, Latshaw will have to

4

conduct 8 mini-trials within the confines of one trial setting.  Not only does this raise case-management concerns, it will prejudice Latshaw and unnecessarily burden the trier of fact. Latshaw therefore respectfully requests that the Court decertify the salaried class.

## FACTUAL BACKGROUND

Latshaw is a privately held drilling company located in Tulsa, Oklahoma.  It provides drilling services to different well operators.  Since 2013, Latshaw has provided drilling services to more than 40 operators on more than 750 wells in multiple states, including Texas, Oklahoma and New Mexico. Operators pay Latshaw based on the daily cost of operating the rigs.[9]  Latshaw has 41 marketable rigs and 24 rigs currently operating.[10]

Drilling rigs can be massive structures housing equipment used to drill water wells, oil wells, or natural gas extraction wells.  Each rig is made up of complex mechanical and electrical systems, including but not limited to motors, pumps, valves, drives, draw-works, etc.....



**Figure 1 – Anatomy of a Drilling Rig**[11]

---

[9] **LDC APPX 002** Ex. 1 Reid Depo 1 29:14-22.
[10] **LDC APPX 003** Ex. 1 Reid Depo 1 30:3-16.
[11]  The equipment associated with a rig is to some extent dependent on the type of rig but typically includes at least some of the following items shown in Figure 1:  1) mud tank; 2) shale

The top drive (shown as #18 – Fig. 1) is a mechanical device on a drilling rig that provides clockwise torque to the drill string to facilitate the process of drilling a borehole. Simply, it is "the drill that drills the hole."[12] Latshaw's rigs typically utilize top drive systems manufactured by Canrig and National Oilwell Varco ("NOV" or "Varco").  A Canrig top-drive is approximately 45,000 pounds and thirty-two feet in length.[13]   Varco top-drives range from 28,000 pounds to 38,000 pounds and are approximately eighteen to twenty feet in length.[14]   A new top drive costs in the neighborhood of $1,800,000.00, and a used top drive can cost between $750,000.00 to $1,200,000.00.[15]

If any of these sophisticated rig parts are not operating properly, this can result in the rigs shutting down and causing what is called, in the vernacular "downtime." Downtime is when Latshaw has all of its employees on a rig, but the rig cannot operate because of a problem with its equipment. Because Latshaw is paid a day rate, downtime equals lost revenue. Thus, Latshaw maintains a maintenance department, the common goal of which is to prevent downtime.[16] Latshaw's maintenance department is made up of three separate work groups or divisions: top-drive technicians, mechanics, and electricians.[17]

---

shakers; 3) suction line (mud pump); 4) mud pump; 5) motor or power source; 6) hose; 7) draw-works; 8) standpipe; 9) Kelly hose; 10) goose-neck; 11) traveling block; 12) drill line; 13) crown block; 14) derrick; 15) racking board (monkey board); 16) stand of drill pipe; 17) setback (floor); 18) swivel (on newer rigs this is replaced by a top drive); 19) Kelly drive; 20) rotary table; 21) drill floor; 22) bell nipple; 23) blowout preventer (BOP) Annular type; 24) Blowout preventer (BOP) Pipe ram & blind ram; 25) drill string; 26) casing head or wellhead; 267 flow line; 28) flow line.
[12] **LDC APPX 019** Ex. 2 Gallander Depo 31:10-13.
[13] **LDC APPX 017** Ex. 2 Gallander Depo 29:16-31:5.
[14] *See id.*
[15] **LDC APPX 042** Ex. 2 Gallander Depo 194:17-22.
[16] **LDC APPX 143-144** Exhibit 10 Deposition of Erin Helvey with excerpt from deposition exhibit 117 ("Helvey Depo") 156:2-157:8; **LDC APPX 013** Ex 1 Reid Depo 205:12-17.
[17] **LDC APPX 021** Ex 2 Gallander Depo 44:1-7.

Latshaw's top-drive technicians manage the maintenance of the top drives on the rigs. Electricians manage the maintenance of all electrical functions of the rigs, and mechanics manage the maintenance of all mechanical components of the rigs (except the top-drive), including the motor and hydraulic systems.[18]  Electricians and mechanics do not touch the top drive.[19]  Thus, top-drive technicians, mechanics and electricians manage *separate systems*, each have *separate duties* and report to *separate superintendents*.[20]

In this case, six of the eight Plaintiffs were top-drive technicians at Latshaw: named Plaintiffs Sanders and Best, and opt-in class members Kendall Bonner ("Bonner"), Gary Favor ("Favor"), Jason Hicks ("Hicks") and Shane Spradlin ("Spradlin").  Opt-in class member James Helenberger ("Helenberger") is a former Latshaw electrician and Mike Stegall ("Stegall") is a former Latshaw mechanic. During the relevant period, the top-drive technicians reported to Latshaw's top-drive superintendent Jean Gallander.[21]  Helenberger reported to Latshaw's mechanics superintendent Ron Funderburg[22] and Stegall reported to Latshaw's electricians' superintendent Dwayne Wilson.[23]   Travis Hickey is the head of Latshaw's maintenance department.[24]

---

[18] **LDC APPX 120, 122-124, 145-146,  148-151** Ex. 10 Helvey Depo 36:20-25, 45:21-46:2, 46:20-47:14, 166:9-167:12, and excerpt from Deposition Ex. 117.
[19] **LDC APPX 027-028** Ex 2 Gallander Depo 98:21-99:3; **LDC APPX 157** Exhibit 11 - Deposition of Ronald Funderburg ("Funderburg Depo") 36:16-37:6.
[20] **LDC APPX 009-010** Ex 1 Reid Depo 1 54:22-55:5 (top drive technicians, mechanics and electricians all work on different things); **LDC APPX 153** Ex 11 Funderburg Depo 24:17-21.
[21] **LDC APPX 005** Ex 1 Reid Depo 42:15-25.
[22] **LDC APPX 007-008** Ex 1 Reid Depo 44:15-45:11; **LDC APPX 154-156** Ex 11 Funderburg Depo 25:14-24, 26:23-27:2.
[23] Dwayne Wilson no longer works at Latshaw.  The current Mechanics Superintendent is Erin Helvey. Plaintiff Stegall worked with Erin Helvey as a mechanic during the relevant period. **LDC APPX 006-007** Ex 1 Reid Depo 1 43:1-44:14; **LDC APPX 119** Ex. 10 Helvey Depo 29:2-11; and **LDC APPX 169** Exhibit 12 - Deposition of Mike Stegall taken October 10, 2017 ("Stegall Depo") 50:3-13.
[24] **LDC APPX 004** Ex. 1 Reid Depo 41:22-24.

Each of the Plaintiffs worked a rotation (commonly referred to as a "hitch") of ten days on and five days off.[25]  They were paid a salary by Latshaw, and each Plaintiff tracked their work on daily reports. But, that is where Plaintiffs' similarity ends.  Their actual job duties, the time spent performing each duty and the relative importance of each duty in preventing downtime varies widely for each top-drive technician, mechanic and electrician.  Depending on where the well being drilled is, the weather, soil conditions, geology, and the like, no two rigs are managed the same.  In fact, drilling a single well can take between two weeks and 90 days.[26] Because well operations are by their very nature unique and individual, the disparate and individualized job duties and responsibilities of each of the Plaintiffs is magnified. This fact is uncontroverted by Plaintiffs who have testified: every day was different; every hour was different;[27] there was "no typical hitch;"[28] "what was broken and where it was broken was ... ever changing;"[29] "every single day was different."[30]  Best agreed that no two problems were the same and every day was a new day.[31]  The duties and responsibilities of a top-drive tech could even vary depending on the manufacturer of the top drive [32]

Latshaw agrees that the Plaintiffs' primary job duties changed daily.[33] "[T]he whole point of the job is it's never the same thing day to day."[34] Two techs could manage the same issue on a

[25] **LDC APPX 011** Ex. 1 Reid Depo 56:1-3; **LDC APPX 128** Ex. 10 Helvey Depo 78:8-10.
[26] **LDC APPX 017** Ex. 2 Gallander Depo 29:11-15.
[27] **LDC APPX 054** Ex. 3 Favor Depo 162:11-14; **LDC APPX 096** Ex. 7 Hicks Depo 123:10-14; **LDC APPX 057, 063** Ex. 4 Helenberger Depo 66:6-12, 182:5; **LDC APPX 076** Ex. 5 Spradlin Depo 195:19-23
[28] **LDC APPX 074** Ex. 5 Spradlin Depo 190:22.
[29] **LDC APPX 057** Ex. 4 Helenberger Depo 66:6-12.
[30] **LDC APPX 063** Ex. 4 Helenberger Depo 182:5.
[31] **LDC APPX 080** Ex. 6 Best Depo 41:9-15.
[32] **LDC APPX 104** Ex. 8 Bonner Depo 200:8-13.
[33] **LDC APPX 202-203** Exhibit 14 - Deposition of Amanda Reid taken February 23, 2018 ("Reid Depo 2") 294:16-295:10; **LDC APPX 046** Ex. 2 Gallander Depo 241:1-12; **LDC APPX 127** Ex. 10 Helvey Depo 76:2-4.
[34] **LDC APPX 046** Ex. 2 Gallander Depo 241:1-12.

rig totally different.[35]   The techs are "not robots."[36]   They are required to "think outside the box."[37]   Helenberger admits the job required "creativity."[38]   And, Spradlin testified that he was not hired to turn a wrench.  He was hired for the "neck up."[39]   Indeed, the most important skill a top-drive tech was required to have was "intelligence."[40]

Plaintiffs functioned as project managers – they were in charge of the planning and overall execution of preventative maintenance for rigs to avoid downtime.[41]   On any given day, preventative maintenance that Plaintiffs' regularly and customarily performed on the rigs included inspecting and assessing rigs as they currently stand and as they will need to be serviced in the future,[42] troubleshooting problems, often over the phone and/or in person or both,[43] procuring necessary parts,[44] engaging third-party vendors,[45] overseeing third-party service providers,[46] training Latshaw drilling crew members on proper maintenance procedures,[47]

---

[35] **LDC APPX 188-189** Exhibit 13 - Deposition of Travis Hickey taken June 9, 2017 ("Hickey Depo") 101:19-102:6.

[36] *See id.*

[37] **LDC APPX 188-191** Ex. 13 Hickey Depo 101:19-102:6,17-103:3,13-104:2.

[38] **LDC APPX 058-059** Ex. 4 Helenberger Depo 126:18-127:9.

[39] **LDC APPX 075-077**  Ex. 5 Spradlin Depo 194:24-196:6.

[40] **LDC APPX 025-026** Ex. 2 Gallander Depo 96:24-97:3.

[41] **LDC APPX 199** Ex. 13 Hickey Depo 159:14-17 ("… they run on their own and manage time on their own between themselves….); **LDC APPX 143-144** Ex. 10 Helvey Depo 156:2-157:8; **LDC APPX 159-160** Ex. 11 Funderburg Depo 43:22-44:10.

[42] **LDC APPX 016** Ex. 2 Gallander Depo 27:6-24; **LDC APPX 129** Ex. 10 Helvey Depo 79:7-10.

[43] **LDC APPX 028-029** Ex. 2 Gallander Depo 99:8-14, 99:25-100:5; **LDC APPX 187** Ex 13 Hickey Depo 93:6-9; **LDC APPX 129** Ex. 10 Helvey Depo 79:3-6; **LDC APPX 161** Ex. 11 Funderburg Depo 47:9-14; **LDC APPX 084, 085** Ex. 6 Best Depo 84:16-25, 135:16-20.

[44] **LDC APPX 040-041** Ex. 2 Gallander Depo 184:9-185:1; **LDC APPX 132** Ex. 10 Helvey Depo 124:4-9; **LDC APPX 165-166** Ex. 11 Funderburg Depo 123:21-124:17.

[45] **LDC APPX 044-045** Ex. 2 Gallander Depo 197:25-198:2, 16-25; **LDC APPX 183-186** Ex. 13 Hickey Depo 43:17-46:19; **LDC APPX 121, 138, 139, 140** Ex. 10 Helvey Depo 42:2-12, 146:4-22, 149:11-22, 150:4-16.

[46] **LDC APPX 197** Ex. 13 Hickey Depo 129:9-22; **LDC APPX 141-142** Ex. 10 Helvey Depo 152:12-153:8.

[47] **LDC APPX 032-035** Ex. 2 Gallander Depo 123:25-124:7, 131:22-132:6; **LDC APPX 125-126** Ex. 10 Helvey Depo 73:9-74:11.

repairing and/or rebuilding equipment,[48] testing equipment,[49] reporting back to the corporate office as to the status of the rigs functioning (both orally and in writing),[50] as well as planning work for when they return on their next rotation, leaving hand-over notes for the next technician who steps into their place,[51] completing inventories,[52] completing daily reports and expense reports,[53] collaborating on checklists,[54] recommending new hires and giving feedback regarding drilling crew members that assisted them.[55]

Not surprisingly, each Plaintiff utilized his own management style and went about his day and work differently depending on the needs of the particular rig on a given day.[56] Best testified that he was able to make decisions on how to fix things at Latshaw,[57] and plainly said "I'm not micro manageable."[58] Sanders, on the other hand, testified that he made no decisions without the approval of his superintendent, and testified that he often called Jean Gallander 20 times or more per day for direction and approvals.[59]  Opt-in Plaintiffs' testimony on this issue was also inconsistent.  Spradlin testified that he planned his own day.[60]  But, Stegall described himself as a "puppet" that just did "whatever he was told."[61]

---

[48] **LDC APPX 195** Ex. 13 Hickey Depo 124:10; **LDC APPX 129** Ex. 10 Helvey Depo 79:11-25.
[49] **LDC APPX 030** Ex. 2 Gallander Depo 112:18-22.
[50] **LDC APPX 198** Ex. 13 Hickey Depo 130:13-16.
[51] **LDC APPX 086** Ex. 6 Best Depo 139:12-16.
[52] **LDC APPX 196** Ex. 13 Hickey Depo 125:4-10.
[53] **LDC APPX 194** Ex. 13 Hickey Depo 111:6-16.
[54] **LDC APPX 023-024** Ex. 2 Gallander Depo 71:3-6, 24-72:5.
[55] **LDC APPX 043** Ex. 2 Gallander Depo 195:16-22; **LDC APPX 192-193** Ex. 13 Hickey Depo 109:23-110:1; **LDC APPX 133-136** Ex. 10 Helvey Depo 125:19-126:25, 127:13-24, 128:5-19; and **LDC APPX 164** Ex. 11 Funderburg Depo 115:12-22.
[56] **LDC APPX 137** Ex. 10 Helvey Depo 138:1-13; **LDC APPX 031** Ex. 2 Gallander Depo 121:6-19 ("They're hired to do a job. I don't have to micromanage.").
[57] **LDC APPX 083** Ex. 6 Best Depo 71:9-25.
[58] **LDC APPX 081** Ex. 6 Best Depo. 56:21-57:4.
[59] **LDC APPX 111-115** Ex. 9 Sanders Depo 167:25-168:2, 182:22-184:1 (Sanders did a lot of calling Jean and saying what do you want me to do … "And then she told me and I went from there.").
[60] **LDC APPX 068** Ex. 5 Spradlin Depo 132:16-18.
[61] **LDC APPX 176** Ex. 12 Stegall Depo 206:12-14.

Even something as simple as truck maintenance was apparently handled differently by Plaintiffs.  For example, Best regularly washed his truck and performed other routine vehicle maintenance during his 10-day hitch.[62]  But, opt-in Plaintiffs Spradlin and Stegall accomplished truck maintenance on their own time.[63]  Spradlin noted that a top drive technician should not have time to do truck maintenance on the job.[64]

Use of third-party vendors to perform work on the rigs also varied among the Plaintiffs. For example, Bonner regularly engaged third-party vendors, but Stegall did not.[65]

Plaintiffs' daily reports also served as a mechanism to track the hours that they worked.[66] Plaintiffs regularly reported their day as 12 hours, sometimes more but never less on the reports. Admittedly, the Plaintiffs were **"*not truthful and honest*"** about the hours they worked.[67]

- Plaintiff Bonner testified that he put 12 hours on his reports no matter what.[68]  For instance, if he attended a safety meeting that was an 8-hour day, but he put 12 hours down on the daily report anyway.[69]

- Plaintiff Favor admits that 12 hours was a "generic number" that he "just stuck in."[70]  His daily reports reflect that he did just that, often overstating the hours he purportedly worked.  For instance, on February 1, 2014, Favor recorded 12 hours for washing his truck and driving to work.[71]  The

---

[62] **LDC APPX 205** Exhibit 15, Randy Best's Daily Reports.
[63] **LDC APPX 073** Ex. 5 Spradlin Depo 185:9-13; **LDC APPX 170-171** Ex. 12 Stegall Depo 77:20-78:1.
[64] **LDC APPX 073** Ex. 5 Spradlin Depo 185:9-13.
[65] **LDC APPX 240** Exhibit 16, Kendall Bonner Daily Reports; **LDC APPX 172** Ex. 12 Stegall Depo 161:20-22.
[66] **LDC APPX 116** Ex. 9 Sanders Depo 219:19-21; **LDC APPX 099** Ex. 8 Bonner Depo 19:11-15; **LDC APPX 012** Ex. 1 Reid Depo 1 59:4-7.
[67] **LDC APPX 099** Ex. 8 Bonner Depo 19:11-19.
[68] **LDC APPX 099** Ex. 8 Bonner Depo 19:11-19.
[69] **LDC APPX 100** Ex. 8 Bonner Depo 82:19-21.
[70] **LDC APPX 051** Ex. 3 Favor Depo 139:14-17.
[71] **LDC APPX 257**  Ex. 18 Favor's Daily Reports, at Latshaw 006673.

next day, he recorded 12 hours for "bad weather."[72]  And, on May 17 and 18, 2014, Favor recorded two 12 hour days to "tool up [his] truck."[73] He even claims that he once worked 24 hours but still only put down 12.[74] Admittedly, Favor does not know how many overtime hours he may have worked.[75]

- Plaintiff Sanders testified that he put 12 hours even if he worked more.[76]

- Plaintiff Helenberger testified that where he did not identify how many hours he worked, we should assume he worked 12 hours.[77]

- Spradlin testified that he put 12 hours down as a default and that he cannot prove the hours he worked.[78]  When asked, he admitted that if he worked 8 hours he doesn't know if he wrote down 12.[79]  In fact, his daily reports reflect obvious examples where his hours are overstated. On May 13, 2014, Spradlin "took a self-imposed light duty day" because he was "just out of shape as hell," but he still recorded 12 hours.[80]  Again, on August 11, 2014, Spradlin recorded 12 hours of work despite noting his "activities [were] light" due to "health problems."[81]

---

[72] **LDC APPX 258** Ex. 18 Favor's Daily Reports, at Latshaw 006677.
[73] **LDC APPX 259-260** Ex. 18 Favor's Daily Reports, at Latshaw 006785 and 006788.
[74] **LDC APPX 052** Ex. 3 Favor Depo 150:16-151:2.
[75] **LDC APPX 049-050** Ex. 3 Favor Depo 116:22-117:1.
[76] **LDC APPX 109-110** Ex. 9 Sanders Depo 137:22-138:6.
[77] **LDC APPX 060-062** Ex. 4 Helenberger Depo 169:20-171:21.
[78] **LDC APPX 072, 069-070** Ex. 5 Spradlin Depo 175:14, 169:6-170:1.
[79] **LDC APPX 071-072** Ex. 5 Spradlin Depo 174:21-175:3.
[80] **LDC APPX 256** Ex. 17 Spradlin's Daily Reports, at Latshaw 010041.
[81] **LDC APPX 255** Ex. 17 Spradlin's Daily Reports, at Latshaw 009660.

- Best testified that he did not work 12 hours every day but often recorded 12 hours as his time worked anyway.[82]   For example, on day 10 of his rotation Best's daily report reflects "Drive home for days off." He recorded 12 hours but admits that it did not take him 12 hours to drive home.[83]   Sometimes, Best did not record his hours because he "wasn't sure what to put in it."[84]

Still other times, Plaintiffs did not record hours at all.[85]   Spradlin even testified that he often saw salaried employees sit in hotels and not work at all, although he refused to name names.[86]

Latshaw did not require Plaintiffs to work a minimum number of hours in a day,[87] but they were not permitted to work more than 12 hours without obtaining permission.[88]   No one told Plaintiffs to write down 12 hours as a default.[89]   In fact, the Latshaw top-drive and electrical superintendents testified that most of the techs probably put in 8-hour days.[90] The mechanic superintendent testified that mechanics likely worked a 9 to 10 hour day on average.[91] Plaintiffs' counsel characterized the hours recorded in Plaintiffs' daily reports as "more of an attendance marker" than the number of hours actually worked.[92]

This evidence establishes that no "primary duty" determination can be made on a collective-wide basis. Nor can a single trial resolve all disputes of fact without delving into each

---

[82] **LDC APPX 087, 088** Ex. 6 Best Depo 171:2-13, 197:21-24.
[83] **LDC APPX 088, 091** Ex. 6 Best Depo 197:14-20 and excerpt from Depo. Ex. 8, at 1101.
[84] **LDC APPX 088-089** Ex. 6 Best Depo 197:21-198:5.
[85] **LDC APPX 101** Ex. 8 Bonner Depo 102:7-17.
[86] **LDC APPX 066-067** Ex. 5 Spradlin Depo 27:23-28:8.
[87] **LDC APPX 180** Ex. 13 Hickey Depo 39:5; **LDC APPX 036-037** Ex. 2 Gallander Depo 164:24-165:8; **LDC APPX 127** Ex. 10 Helvey Depo 76:5-7; **LDC APPX 011** Ex. 1 Reid Depo 1 56:4-22.
[88] **LDC APPX 179** Ex. 13 Hickey Depo 38:23, 41:4-42:14; **LDC APPX 020, 022** Ex. 2 Gallander Depo 42:1-17; 48:4-18; **LDC APPX 162-163** Ex. 11 Funderburg Depo 107:15-108:24.
[89] **LDC APPX 038** Ex. 2 Gallander Depo 171:8-25.
[90] **LDC APPX 037** Ex. 2 Gallander Depo 169:2; **LDC APPX 158** Ex. 11 Funderburg Depo 38:3-10.
[91] **LDC APPX 130** Ex. 10 Helvey Depo 86:25-87:13.
[92] **LDC APPX 038-039** Ex. 2 Gallander Depo 171:13-172:4.

individual Plaintiff's personal experience.

## ARGUMENT AND AUTHORITY

### I.     Plaintiffs' Stringent Burden Of Proof

Unlike the "lenient" standard applied at the conditional certification stage, the second stage decertification analysis requires a more rigorous review of the record because the Court has the benefit of more information following discovery. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-16 & n. 7-8 (5th Cir. 1995). At this second stage, Plaintiffs bear the burden of proving the individual class members are "similarly situated." *Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008). A simple job description alone provides no common glue to Plaintiffs' individualized claims and Latshaw's defenses at this stage. See 29 C.F.R. § 541.2; *Reyes v. Tex. EZPawn, L.P.,* 2007 WL 101808, at *2 (S.D. Tex. Jan. 8, 2007); *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 578-79 (E.D. La. 2008) (uniform job description and corporate policies are insufficient evidence to sustain certification); and *Lipnicki v. Meritage Homes Corp.*, 2014 WL 5620603, *1, *3 (S.D. Tex. Nov. 4, 2014) (plaintiffs' testimony regarding day to day routines outweighed common job description). Nor do standardized policies or oversight create sufficient similarity:

> Although all Managers answer to a District Manager, the issue is *relative* freedom from direct supervision, not complete freedom. Several courts have held that employees who follow detailed corporate directives and company policies are not so tightly controlled or stripped of discretion that their work does not qualify as exempt.

*Green v. Harbor Freight Tools USA, Inc.,* 888 F. Supp. 2d 1088, 1099 (D. Kan. 2012) (internal quotation omitted).

Courts look to three factors in conducting the "similarly situated" analysis: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant that appear to be individual to each plaintiff; and (3) fairness and

procedural considerations. *Mooney*, 54 F.3d at 1213-14 & n. 7. "[T]he more dissimilar plaintiffs are and the more individuated [the employer's] defenses are, the greater doubts there are about the fairness of a ruling on the merits--for either side--that is reached on the basis of purportedly representative evidence." *Big Lots*, 561 F. Supp. 2d at 574; see also *Vanzzini v. Action Meat Distributors, Inc.,* 995 F. Supp. 2d 703, 720 (S.D. Tex. 2014) (the central question is whether there is a "factual nexus which binds the named plaintiffs and the potential class members together . . . so that hearing the cases together furthers the purposes of Section 16, is fair to both parties, and does not result in an unmanageable trial") (internal quotation omitted).

## II.     Plaintiffs' Disparate Factual and Employment Settings Require Decertification of the Collective Action.

### A.     Job Duties

The first factor of the similarly situated analysis requires the court to conduct the similarly-situated analysis with respect to all of Plaintiffs' "job duties, geographic locations, supervision, and salary." *Reyes*, 2007 WL 101808, at *2. Even if certain Plaintiffs "may have spent the majority of their time performing nonexempt tasks does not [itself] establish sufficient similarities to warrant class certification." *Id. citing Smith v. Heartland Automotive Srvcs., Inc.*, 404 F. Supp. 2d 1144, 1152 (D. Minn. 2005). Rather, courts look at the similarity of each employee's job duties to ensure it can make a determination as to whether an employer properly classified each employee. *Reyes*, 2007 WL 101808, at *2. In light of this required focus on actual duties, misclassification claims like Plaintiffs' are decertified where, as here, factual variations exist regarding the Plaintiffs' locations, job duties, and use of discretion. *See Lipnicki v. Meritage Homes Corp.*, 2014 WL 5620603, at *3-5 (S.D. Tex. Nov. 4, 2014) (decertifying collective action in light of disparities in plaintiffs' "on the ground" experiences despite their

uniform classification); *Reyes*, 2007 WL 101808, at *2; *Big Lots*, 561 F. Supp. 2d at 574.

For instance, in *Reyes v. Texas EZPawn*, the court decertified a class of forty-two assistant managers in Texas because discovery revealed significant differences in job duties, discretion, and authority, depending on the practices of individual store managers, demographics, locations, and plaintiffs' own perceptions of their roles. 2007 WL 101808, at *2. The court focused on the plaintiffs' disparate testimony regarding their participation in pricing, training, filling out company paperwork, scheduling, interviewing, hiring, supervising, and handling complaints. *Id.* at *3-4. Even though the plaintiffs held the same job title and alleged global misclassification, the court decertified the class because it found no commonality in their actual day-to-day job duties. *Id.* at *4.

At a high level of generality, the Plaintiffs' job duties may be similar in that they are subject to comparable job descriptions, manage preventative maintenance on rigs and are supervised by a superintendent.  But in terms of individual job duties, like in *Reyes*, the evidence shows that the Plaintiffs have different responsibilities from one another and that individuals themselves have different duties from day-to-day and within a single day.  On any given day, Plaintiffs' job duties included inspecting and assessing rigs, troubleshooting problems, procuring necessary parts, engaging third-party vendors, overseeing third-party service providers, training drilling crew members, repairing and/or rebuilding equipment, testing equipment, reporting back to the corporate office as to the status of the rigs, planning work for when they return on their next rotation, leaving hand-over notes for the next technician who steps into their place, completing inventories, completing daily reports and expense reports, collaborating on checklists, recommending new hires and giving feedback regarding drilling crew members that assisted them.

The nature of Plaintiffs' job experiences varied considerably in relevant ways.  Plaintiffs uniformly testified that **every day was different; every hour was different.**[93] Spradlin testified, **there was "no typical hitch."**[94]  Helenberger affirmed that **"what was broken and where it was broken was ... ever changing"**[95] and **"every single day was different."**[96]  Best's testimony brought it home:

> Q:    **So I guess it's fair to say no two problems are the same?**
> A:    **No.**
> Q:    **Every day is a new day.**
> A.    **Yes ma'am. It's the oilfield….**
> Q:    **Is that what makes it interesting though?**
> A:    **Yes ma'am.**[97]

Latshaw agrees that the Plaintiffs' primary job duties changed daily.[98] Indeed, "the whole point of the job is it's never the same thing day to day."[99] Two techs could manage the same issue on a rig totally different.[100]  They are required to "think outside the box."[101]  "Intelligence" is their most important skill.[102]

This variation is manifest in duties highly relevant to the assessment of each Plaintiff's proper classification, including, among other things, their involvement in supervising, hiring, and training, as well as each Plaintiffs' relative freedom from direct supervision.  For example, Plaintiffs offered varied testimony regarding the level of discretion that they exercised.  Best

---

[93] **LDC APPX 054** Ex. 3 Favor Depo 162:11-14; **LDC APPX 096** Ex. 7 Hicks Depo 123:10-14; **LDC APPX 057, 063** Ex. 4 Helenberger Depo 66:6-12, 182:5; **LDC APPX 076** Ex. 5 Spradlin Depo 195:19-23.
[94] **LDC APPX 074** Ex. 5 Spradlin Depo 190:22.
[95] **LDC APPX 057** Ex. 4 Helenberger Depo 66:6-12.
[96] **LDC APPX 063** Ex. 4 Helenberger Depo 182:5.
[97] **LDC APPX 080** Ex. 6 Best Depo 41:9-15.
[98] **LDC APPX 202-203** Ex. 14 Reid Depo 2 294:16-295:10; **LDC APPX 046** Ex. 2 Gallander Depo 241:1-12.
[99] **LDC APPX 046** Ex. 2 Gallander Depo 241:1-12.
[100] **LDC APPX 188-189** Ex. 13 Hickey Depo 101:19-102:6.
[101] **LDC APPX 188-191** Ex. 13 Hickey Depo 101:19-102:6,17-103:3,13-104:2.
[102] **LDC APPX 058** Ex. 4 Helenberger Depo 126:18-127:9; **LDC APPX** 075-077 Ex. 5 Spradlin Depo 194:24-196:6; and **LDC APPX 025-026** Ex. 2 Gallander Depo 96:24-97:3.

testified that he made the decision on how to manage top-drive projects.[103] To quote Best – "I'm not micro manageable."[104] It's what he loved most about his job. Spradlin similarly testified that he made his own daily schedule.[105] In sharp contrast, Sanders testified that he made no decisions without the approval of his superintendent[106] and Stegall described himself as a "puppet" that just did "whatever he was told."[107] Thus, the testimony among the named Plaintiffs (Sanders and Best) is inconsistent and the inconsistencies bleed over to the opt-in Plaintiffs.

Plaintiffs also offered disparate testimony regarding the engagement of third-party vendors to perform work on the rigs. Some Plaintiffs regularly and customarily called third-parties to perform maintenance on the rigs while others testified that they were directed not to use third-parties.[108] Even something as simple as truck maintenance was handled differently. Best regularly washed his truck and performed other routine vehicle maintenance during his 10-day hitch.[109] But, opt-in Plaintiffs Spradlin and Stegall maintained their truck on their own time.[110]

Plaintiffs' contradictory testimony on key issues demonstrates that a trial of this matter will require fact intensive and highly-individualized inquiry into each class member's actual job duties, the time spent performing each duty and the relative importance of each duty. Such

---

[103] **LDC APPX 083** Ex. 6 Best Depo 71:9-25.
[104] **LDC APPX 081-082** Id. at 56:21-57:4.
[105] **LDC APPX 068** Ex. 5 Spradlin Depo 132:16-18.
[106] **LDC APPX 111-112, 114** Ex. 9 Sanders Depo 167:25-168:2 (talked to Jean 20 times or more a day), 183:22-184:1 (did a lot of calling Jean … and saying what do you want me to do… And then she told me and I went from there.).
[107] **LDC APPX 176** Ex. 12 Stegall Depo 206:12-14.
[108] Compare **LDC APPX 240** Ex. 16 Bonner's Daily Reports to **LDC APPX 172** Ex. 12 Stegall Depo 161:20-22.
[109] **LDC APPX 205** Ex. 15 Randy Best's Daily Reports.
[110] **LDC APPX 073** Ex. 5 Spradlin Depo 185:9-13; **LDC APPX 170-171** Ex. 12 Stegall Depo 77:20-78:1.

diversity in individual employment situations inhibits Latshaw from proving its statutory exemption defenses as to all Plaintiffs based on representative proof and weighs in favor of decertification. *See e.g. Big Lots,* 561 F. Supp. 2d at 584-586 (finding that contradictory deposition testimony among the plaintiffs regarding their job duties makes collective adjudication imprudent).

Simply put, Plaintiffs have nothing to tie the class together but general allegations of misclassification, the fact that opt-ins served as salaried technicians, and that they claim to have performed some amount of nonexempt work during their workdays. As in *Reyes, Big Lots*, and the other cases cited above, these superficial similarities are not enough.

### B.     Hours

The prominence of individualized issues in this case only begins with Plaintiffs'' job duties. **Plaintiffs admit that their reported hours are "not truthful and honest**."[111] Plaintiffs who reported their hours almost uniformly reported 12 hours as a generic number, regardless of how many hours they actually worked.  Plaintiffs' superintendents each testified that a typical day for Plaintiffs was closer to 8 or 9 hours, not 12.[112]  Sometimes Plaintiffs reported no time at all on their daily report or failed to even submit a daily report, leaving no evidence that the he worked on certain days.  What's more, Plaintiffs' daily reports reveal that Plaintiffs even recorded 12 hours on days when they did nothing at all or drove to and from work.[113]  Opt-in Plaintiff Favor acknowledged that he does not know how many overtime hours he may have

---

[111] **LDC APPX 099, 100** Ex. 8 Bonner Depo 19:11-19, 82:19-21; **LDC APPX 049-050, 051, 052-053** Ex. 3 Favor Depo 116:22-117:1, 139:14-17, 150:16-151:2; **LDC APPX 109-110** Ex. 9 Sanders Depo 137:22-138:6; **LDC APPX 060-062** Ex. 4 Helenberger Depo 169:20-171:21; **LDC APPX 069-072** Ex. 5 Spradlin Depo 175:14, 174:21-175:3, 169:6-170:1; **LDC APPX 087, 088** Ex. 6 Best Depo 171:2-13, 197:14-24, Depo. Ex. 8, at 1101.

[112] **LDC APPX 130-131** Ex. 10 Helvey Depo 86:25-87:13; and **LDC APPX 158** Ex. 11, Funderburg Depo. 38:3-10

[113] **LDC APPX 257** Ex.18 Favor's Daily Reports; and **LDC APPX 255** Ex. 17 Spradlin's Daily Reports.

worked[114] and Spradlin testified that he cannot prove the hours he worked.[115]  Plaintiffs' counsel attempts to discount this testimony by characterizing the hours Plaintiffs reported as nothing but an "attendance marker." In truth, Plaintiffs' testimony establishes that they cannot offer actual or representative proof that they worked overtime.

There is no evidence of any common experience as to employees' hours worked or the existence of "overtime." Individual variations in hours worked, both above and below the overtime threshold, is a material fact that supports decertification. See *Proctor*, 250 F.R.D. at 282-83.  Plaintiffs' hours would presumably have to be reconstructed from memory, inferred from the particulars of the work the technicians did on an individual basis at trial.  Otherwise, if the trier of fact found Plaintiffs to be non-exempt, any damages awarded to Plaintiffs could confer a windfall on some Plaintiffs and/or undercompensate others.  To determine damages in this matter, will require eight separate evidentiary hearings which undermines the purpose of proceeding as a collective action.  *See e.g. Wilson v. Navika Capital Group, LCC,* 2014 WL 2534904, Civ. Action No. 4:10-CV-1569, * 6 (S.D. Tex. June 4, 2014) (finding decertification was proper because it will be necessary to have testimony on the quantum of hours Plaintiffs worked; Plaintiffs were in essence asking the case to proceed as 42 mini-trials); *Espenscheid v. DirectStat USA, LLC,* 705 F.3d 770 (7th Cir. 2013) (finding trial as a collective action to be infeasible due to variance in damages across class members because plaintiffs did not correctly report their time); and *Briggins v. Elwood Tri, Inc.,* 882 F. Supp. 2d 1256 (N.D. Ala. 2012) (finding that collective action would be unmanageable where proving damages in a way that is not overly prejudicial to defendants would require individual inquiries).

---

[114] **LDC APPX** 049-050 Ex. 3 Favor Depo  116:22-117:1.
[115] **LDC APPX 072, 069-070**  Ex. 5 Spradlin Depo 175:14; 169:6-170:1.

**C.      Named Plaintiffs are not representative of opt-ins**

Notwithstanding, Plaintiffs contradictory testimony on key issues, the named-Plaintiffs cannot represent all the opt-in Plaintiffs.  Here, named-Plaintiffs Sanders and Best were both top drive mechanics. They cannot offer representative testimony regarding the duties of the opt-in electricians and mechanics that not only worked in different divisions of Latshaw's maintenance department, reported to different superintendents but managed the preventative maintenance of different parts of the rigs.   Electricians and mechanics did not touch the top-drive.[116] Additionally, the ever-changing circumstances of the Plaintiffs meant that they worked, at best, overlapping hitches and could not possibly reliably testify as to what the other Plaintiffs regularly did. Further, rigs located in West Texas may require different pressures and maintenance issues than rigs in Oklahoma.  Such variances would be equally possible even with the West Texas area from rig to rig.  *See Basco v. Wal-Mart Stores, Inc.,* 2004 WL 1497709, Civ.A. 00-3184, *8 (E.D. La. July 2, 2004) (finding that members of the proposed class from different departments and groups within Walmart at different geographic locations were subject to disparate factual and employment settings warranting decertification).

Moreover, the lone mechanic in this case, Stegall, testified that he is familiar with Best and Sanders but does not know them well.[117] Stegall does not know Bonner, Favor, Hicks or Spradlin at all, and while he is aware that Helenberger is an electrician he has never spoken to Helenberger.[118]  Opt-in Plaintiff Hicks similarly testified that he does not know Best, Bonner, Favor, Helenberger, Spradlin or Stegall.[119]  Under the circumstances, it is hard to imagine how

---

[116] **LDC APPX 175** Ex. 12 Stegall Depo 200:11.
[117] **LDC APPX 173** Ex. 12 Stegall Depo 198:16-23.
[118] **LDC APPX 173-175** Ex. 12 Stegall Depo 198:24-25, 199:13-200:11.
[119] **LDC APPX 093-094** Ex. 7 Hicks Depo 79:15-24, 80:1-81:13.

any single Plaintiff's testimony at trial can be representative of the experience of any other Plaintiff in this case.

### III.   Individualized Defenses Confirm Collective Treatment Is Not Possible.

The second factor takes into account the potential defenses that pertain to the opt-in class and whether these defenses will break down the class into individualized inquiries not suitable for a collective action. *Reyes*, 2007 WL 101808, at *5. Collective treatment is not appropriate where a defendant would be required "to pick the class apart, plaintiff by plaintiff, going into the day-to-day job duties of each of the plaintiffs" to prove its defenses. *See Big Lots*, 561 F. Supp. 2d at 586 (explaining that "[u]sing representative proof is problematic if for every instance in which an opt-in plaintiff reported that she hired subordinates, there is an alternative response to the contrary"). "That exercise is tantamount to conducting multiple individual trials on the merits and is the antithesis of a collective action." *Id.*

Here, Latshaw asserts the application of three exemption defenses: highly compensated employee, executive and administrative.  For the exemption tests, the fact-finder must determine that management of preventative maintenance on the rigs is the employee's primary duty to establish an executive exemption, 29 C.F.R. § 541.100(a)(2), or that the employee exercises discretion and independent judgment to establish an administrative exemption. 29 C.F.R. § 541.200(a)(3). The fact-finder must consider the relative importance of the employee's exempt as compared to nonexempt work; relative freedom from direct supervision; and comparison of employee's wages to the wages of those employees performing the same nonexempt work. 29 C.F.R. § 541.700(a). Time spent doing nonexempt work is not the sole consideration. 29 C.F.R. § 541.700(b).

"The exemption inquiry requires examination of the duties that the employee actually performs." 29 C.F.R. §541.700(a). Thus, Latshaw's defenses are specific to individual Plaintiffs or groups of Plaintiffs.  For instance,

- Latshaw maintains that all Plaintiffs were exempt for some or all the statutory period as highly compensated employees. Named-Plaintiff Sanders did not earn more than $100,000 salary for the entire relevant time frame; thus, he may be exempt as a highly compensated employee for some of the statutory period but not the entire statutory period.  That does not mean that he was not otherwise exempt under the administration or executive exemptions for the brief period in which his salary was less than $100,000.

- One or more Plaintiffs may also be exempt as executives.  A mandatory element of this exemption is the authority to hire or fire or make recommendations about another's employment status that were given particular weight.  Some Plaintiffs testified that they regularly hired and rejected the work of third parties in performing maintenance on the rigs,[120] but other Plaintiffs testified that they did not have authority to hire or fire workers.[121]

- Plaintiffs' testimony regarding whether they were free from direct supervision was all over the map - even the named Plaintiffs Best and Sanders disagreed.[122]

These are just a few examples, but they illustrate, individualized inquiries about each Plaintiff will be required for Latshaw to establish Plaintiffs' exempt status.

---

[120] **LDC APPX 102-103, 106-107** Ex. 8 Bonner Depo 138-139, excerpts from exhibit 44A.
[121] **LDC APPX 172** Ex. 12 Stegall Depo 161:20-22.
[122] **LDC APPX 081-083** Ex. 5 Best Depo. 56:21-57:4; 71:9-25; **LDC APPX 111-115** Ex. 9 Sanders Depo 167:25-168:2; 182:22-184;1.

The dissimilarity of some of Plaintiffs' self-reported job duties makes it exceedingly difficult for Latshaw to assert its statutory exemption defenses on a collective basis.  Using representative proof is problematic if for every instance in which an opt-in plaintiff reported that he hired subordinates, there is an alternative response to the contrary.  Latshaw's only option is to pick the class apart Plaintiff by Plaintiff going into the day-to-day job duties of each of the Plaintiffs to prove that the top-drive technicians, electricians, and mechanics are properly classified as exempt under one or more of the three exemptions.  "That exercise is tantamount to conducting multiple individual trials on the merits and is the antithesis of a collective action." *Big Lots,* 561 F. Supp. 2d at 586.

## IV.   Continued Collective Treatment Would Be Unmanageable, Unduly Burdensome and Unfair.

The third and final factor of the similarly situated analysis looks to fairness and procedural considerations. Here, individual Plaintiffs vary widely in the tasks burdensome. *See Reyes*, 2007 WL 101808, at *5; *see also Morisky*, 111 F. Supp. 2d 493, 499 (D.N.J. 2000) (decertifying collective action where "[t]he exempt or non-exempt status of potentially hundreds of employees would need to be determined on a job-by-job, or more likely, an employee by-employee basis"). Indeed, "the use of representative testimony is justified only where it is reasonable to believe that the testifying witnesses' experiences are *sufficiently similar* to those of the rest of the non-testifying plaintiffs." *Roussell v. Brinker Int'l, Inc.*, 2008 WL 2714079, at *22 (S.D. Tex. July 9, 2008) (emphasis added); *see also Espenscheid,* 705 F.3d at 774-75.

The record of differences here confirms that no Plaintiff could testify in a manner "representative" of the class, and attempting to rely upon any testimony as "representative" would be unfair to all parties and procedurally improper. Thus, a vast number of witnesses would be required to testify--including Plaintiffs, their supervisors, and possibly employees or third-

party vendors supervised by Plaintiffs--with the trier of fact essentially hearing multiple individual claims under the guise of a collective action. It is Plaintiffs' burden to "propose a specific and feasible plan for trying" the case collectively in a "fair and manageable way" without devolving into a series of mini-trials. They have not and cannot do so here.

On the other hand, Plaintiffs will not be prejudiced by decertification because they will retain the right to individually pursue their claims. Many have benefited from class-wide discovery on issues relevant to their personal claims. In addition, any Plaintiff with a credible claim will benefit from litigating his claim separately from the claims of Plaintiffs who are clearly FLSA-exempt.

## CONCLUSION

Because Plaintiffs cannot and have not met their heavy burden of proving they are "similarly situated," collective treatment of the salaried class of top-drive technicians, electricians and mechanics is not appropriate. Accordingly, Latshaw respectfully requests that the Court decertify the class and dismiss the opt-in Plaintiffs' claims without prejudice.

## Certificate of Conference

Defendant's counsel conferred via telephone on August 23, 2018 with counsel for Plaintiffs, David Moulton, in this matter. The Plaintiffs oppose the relief sought herein.

Respectfully submitted,

*s/Madalene A.B. Witterholt, Pro Hac Vice*
Madalene A. B. Witterholt, OBA # 10528
CROWE & DUNLEVY, P.C.
321 S. Boston Ave., Suite 500
Tulsa, Oklahoma 74103
Telephone: 918-592-9800
Facsimile:  918-599-6325
Email: m.witterholt@crowedunlevy.com

-and-

Kevin M. Duddlesten, TX Bar #00793644
McGUIRE WOODS, LLP
2000 McKinney Avenue, Suite #1400
Dallas, Texas 75201
Tel: 214-932-6419
Facsimile: 214-932-6499
Email: kduddlesten@mcguirewoods.com
***ATTORNEYS FOR DEFENDANT,***
***LATSHAW DRILLING COMPANY, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on this **24th** day of **August 2018**, I electronically transmitted the above and foregoing to the Court Clerk using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Richard J. (Rex) Burch
David I. Moulton
James A. Jones
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com
dmoulton@brucknerburch.com
jjones@brucknerburch.com
**ATTORNEYS FOR PLAINTIFFS**

Michael A. Josephson
Andrew W. Dunlap
Lindsay Rae Itkin
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite# 3050
Houston, Texas  77005
Telephone:  (713) 352-1100
Telecopier: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
litkin@mybackwages.com
**ATTORNEYS FOR PLAINTIFFS**

*s/Madalene A.B. Witterholt, Pro Hac Vice*
Madalene A.B. Witterholt

3368615.5