# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| LUTHER SANDERS and RANDY BEST, | ) | |
| Individually and On Behalf of Others Similarly | ) | |
| Situated, | ) | Case No. 3:16-cv-01093-S |
| | ) | Judge Karen Gren Scholer |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LATSHAW DRILLING COMPANY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

---

## MEMORANDUM IN SUPPORT OF DEFENDANT LATSHAW DRILLING COMPANY, LLC'S MOTION FOR SUMMARY JUDGMENT

---

Madalene A. B. Witterholt
CROWE & DUNLEVY, P.C.
321 S. Boston Ave., Suite 500
Tulsa, Oklahoma 74103
Telephone: 918-592-9800
Facsimile:  918-599-6325
Email: m.witterholt@crowedunlevy.com


-and-

Kevin M. Duddlesten, TX Bar #00793644
McGUIRE WOODS, LLP
2000 McKinney Avenue, Suite #1400
Dallas, Texas 75201
Telephone: 214-932-6419
Facsimile: 214-932-6499
Email: kduddlesten@mcguirewoods.com
**ATTORNEYS FOR DEFENDANT,
LATSHAW DRILLING COMPANY, LLC**

# TABLE OF CONTENTS

SUMMARY OF ARGUMENT .................................................................................. 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ........................................... 3

    Latshaw's Business and Reporting Structure............................................. 5

    Plaintiffs' Duties ....................................................................................... 8

    Plaintiffs' Hours ...................................................................................... 13

    Plaintiffs Received Total Annual Compensation Over $100,000 ........... 16

        Sanders...................................................................................... 16

        Best  ........................................................................................... 16

        Spradlin..................................................................................... 17

        Bonner ...................................................................................... 17

        Favor ........................................................................................ 18

        Hicks ........................................................................................ 18

        Helenberger .............................................................................. 19

        Stegall ...................................................................................... 20

    Best's Retaliation Claim.......................................................................... 21

STANDARD OF REVIEW ................................................................................... 24

ARGUMENT AND AUTHORITIES...................................................................... 25

    A.  Plaintiffs Are Exempt Under the Administrative Exemption. ........... 25

        1.  Plaintiffs Were Each Compensated on a Salary Basis of Not Less than $455 Per Week .......................................................................................... 27

        2.  Plaintiffs' Primary Duty Was the Performance of Non-Manual    Work Directly Related to the General Business Operations of  Latshaw ............................. 27

        3.  Plaintiffs' Primary Duty Includes the Exercise of Discretion and    Independent Judgment With Respect to Matters of Significance....................................................... 30

i

4.   Conclusion..................................................................................................... 33

B.   Even if Plaintiffs Were Not Otherwise Exempt Administrative Employees, Plaintiffs Were Exempt "Highly Compensated Employees" ................................................................... 34

1.   Plaintiffs Received Total Annual Compensation Over $100,000 .................................. 34

2.   Plaintiffs Customarily and Regularly Performed One Exempt Duty of   an Administrative or Executive Employee ......................................................... 34

3.   Conclusion..................................................................................................... 38

C.   Plaintiffs' Claim under the NMMWA Fails as a Matter of Law Because  Plaintiffs Did not Make Demand on Latshaw for Unpaid Overtime .............................................. 38

D.   Best's Unlawful Retaliation Claim Fails, as a Matter of Law Because There  is No Causal Connection Between The Filing of This Lawsuit and Latshaw's  Decision Not to Engage Best as Contractor to Do Work for Latshaw ...................................................... 39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amendola v. Bristol-Myers Squibb Co.*,
 558 F. Supp. 2d 459, 478 (S.D.N.Y. 2008)............................................................................35

*Bellone v. Kraft Power Corp.*,
 2016 WL 2992126, No. 15-CV-3168 (E.D.N.Y. May 23, 2016) ...........................................38

*Bodenheimer v. PPG Indus., Inc.*,
 5 F.3d 955 (5th Cir. 1993) ....................................................................................................40

*Brock v. Richardson*,
 812 F.2d 121, 123 (3d Cir. 1987).........................................................................................40

*Celotex Corp. v. Catrett*,
 477 U.S. 317, 323 (1986).......................................................................................................25

*Chicca v. St. Luke's Episcopal Health Sys.*,
 858 F. Supp. 2d 777, 782 (S.D. Tex. 2012) ..........................................................................27

*Dalheim v. KDFW-TV*,
 918 F.2d 1220, 1225-26 (5th Cir. 1990) ..........................................................................25, 28

*Donovan v. Burger King Corp.*,
 672 F.2d 221, 226 (1st Cir. 1982)..........................................................................................28

*Guthrie v. Tifco Indus.*,
 941 F.2d 374, 376 (5th Cir. 1991) .........................................................................................40

*James v. Medical Control, Inc.*,
 29 F. Supp. 2d 749, 753 (N.D. Tex. 1998) .......................................................................42, 43

*Leahy v. Anderson Crenshaw & Assoc., L.L.C.*
 2010 WL 1459197, No. 3:08-CV-1732-L, *6 (N.D. Tex. April 9, 2010) .............................42

*Lott v. Howard Wilson Chrysler-Plymouth, Inc.*,
 203 F.3d 326, 331 (5th Cir. 2000) ..............................................................................27, 28, 33

*McDonnell Douglas Corp. v. Green*,
 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973)............................................................40

*NGrime v. Pappillio Manor, Inc.*,
 2009 WL 382757, No. 8:08CV23, *5 (D. Neb. Feb. 12, 2009)...............................................43

*Olitsky v. Spencer Gifts, Inc.*,
  964 F.2d 1471 (5th Cir. 1992) ........................................................40

*Pruneda v. Xtreme Drilling & Coil Services,*
  Inc., 2017 WL 3023214, No. 5.16-CV-091-DAE (W.D. TX June 20, 2017).........................37

*Roberson v. Allel Info. Servs.*,
  373 F.3d 656 (5th Cir. 2004) .......................................................41

*Southard v. Texas Bd. of Criminal Justice*,
  114 F.3d 539, 554 (5th Cir. 1997) .................................................41

*St. Mary's Honor Center v. Hicks*,
  509 U.S. 502, 113 S. Ct. 2742, 2747, 125 L.Ed.2d 407, 416 (1993)...............40, 41

*Strickland v. MICA Info. Sys.*,
  800 F.Supp. 1320, 1323 (M.D.N.C.1992) ......................................40

*Texas Dep't of Community Affairs v. Burdine*,
  450 U.S. 248, 255 at n. 10, 101 S. Ct. 1089, 1095 at n. 10, 67 L.Ed.2d 207
  (1981)..........................................................................40, 41

*Unit v. Aerospace Corp.*
  765 F.2d 1440, 1446 (9th Cir. 1985) .............................................43

*Vela v. City of Houston*,
  276 F.3d 659, 667 (5th Cir. 2001) ................................................25

*Wheatfall v. Potter*,
  2010 WL 2854284, No. H-07-1937, *6 (S.D. Tex. July 19, 2010) ...............42

*Williamson v. BOPCO L.P.*,
  2017 WL 5071336, No. PE:16-CV-79-RAJ-DF (W.D. Tex. Sept. 27, 2017).........37

*Zannikos v. Oil Inspections (USA), Inc.*,
  605 Fed. Appx. 349, 353-54, 360 (5th Cir. 2015) ............................38

**Statutes**

29 U.S.C. §213(a)(1).........................................................................25

29 U.S.C. §213(a)(1), Section 213(a)(1).............................................25

29 U.S.C. § 215...............................................................................40

29 U.S.C. §541.200(a) ..................................................................1, 26

29 U.S.C. §216(b) .........................................................................1, 3

Fair Labor Standards Act ................................................................................................ *passim*

N.M.S.A. §50-4-4(A) (1978)..........................................................................................39

N.M.S.A. §50-4-4(C) (1978)..........................................................................................39

NMSA §50-4-19 et seq. ...................................................................................................2

New Mexico Minimum Wage Act.........................................................................3, 38, 39

Title VII ...................................................................................................................40, 41

## Other Authorities

29 C.F.R. 541.601(a)......................................................................................................34

29 C.F.R. 541.708 ..........................................................................................................38

29 C.F.R. §541.03 ..........................................................................................................28

29 C.F.R. §541.201(A) ...................................................................................................28

29 C.F.R. §541.202(b) ....................................................................................................31

29 C.F.R. §541.601 ..........................................................................................................1

29 C.F.R. §541.601(c)....................................................................................................34

29 C.F.R. §541.700 ........................................................................................................27

29 C.F.R. §541.700(a).....................................................................................................29

29 C.F.R. §541.701 ........................................................................................................34

Fed. R. Civ. P. 56(a) ......................................................................................................24

https://en.wikipedia.org/listofcomponentsofoildrillingrigs (19 June 2018)......................................6

Defendant Latshaw Drilling Company, LLC ("Latshaw") hereby submits this memorandum in support of its motion for summary judgment on Plaintiffs' overtime claims and on Plaintiff Randy Best's retaliatory discharge claim and seeks judgment as a matter of law in favor of Latshaw.

## SUMMARY OF ARGUMENT

Plaintiffs seek overtime compensation, but the uncontested facts demonstrate they are not entitled to overtime because they were exempt employees under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b).  As top drive technicians, electricians and mechanics, Plaintiffs were the managers of Latshaw's onsite rig maintenance program, and were paid $100,000 or more annually.

Plaintiffs were exempt administrative employees as a matter of law, 29 U.S.C. §541.200(a). Plaintiffs were the highest-ranking maintenance employees in the field, and their primary duty was managing maintenance of drilling rigs to prevent downtime - a matter of supreme significance to the business of Latshaw and its customers.  In doing so, Plaintiffs regularly inspected rigs, prioritized and planned preventative maintenance and repairs of the top drive and electrical and mechanical systems.  Plaintiffs also regularly reported to superintendents and the maintenance and operations managers regarding the status of the rigs by completing daily reports and other paperwork.  Latshaw relied on Plaintiffs as its eyes and ears at rig locations and Plaintiffs routinely exercise discretion and independent judgment in performing their work.

Plaintiffs certainly meet the requirements to qualify for the administrative exemption, but because they were highly compensated, they only have to meet the less stringent requirement of the highly compensated employee exemption, 29 C.F.R. §541.601.  It is undisputed that plaintiff

Randy Best and the opt-in plaintiffs Kendall Bonner, Gary Favor, James Helenberger, Jason Hicks, Shane Spradlin and Mike Stegall each earned over $100,000 a year throughout the entire term of their employment with Latshaw. Beginning August 1, 2014 and thereafter, plaintiff Luther Sanders' base salary was also $100,000 or more.[1] It is undisputed that Plaintiffs customarily and regularly performed at least one of the exempt duties of an executive employee and/or an administrative employee.

Plaintiffs by their own admissions, stated they regularly performed the following duties: preparing daily reports reporting on the status of rigs and work to be done, preparing handover notes to inform other technicians of the status of projects, preparing inventories and expense reports, inspecting work sites, prioritizing and directing work to be done at the rigs, engaging contractors to perform maintenance on the rigs and overseeing their work, training the drilling crew on proper maintenance, troubleshooting and determining techniques to be used to maintain the rigs and procuring the necessary parts and tools to perform the required maintenance. Customarily and regularly performing *just one* exempt duty, paired with receiving an annual salary over $100,000, qualifies Plaintiffs as exempt under the FLSA.[2]

Additionally, Plaintiffs, collectively, seek damages for unpaid overtime under the New Mexico Minimum Wage Act ("NMMWA"), NMSA §50-4-19 et seq. Plaintiffs' claim fails as a matter of law. First, at least one opt-in plaintiff testified that he did not work in New Mexico

---

[1] For the one year period beginning July 31, 2013 to July 31, 2014, plaintiff Luther Sanders earned less than $100,000 but he was an exempt administrative employee as a matter of law and not entitled to overtime. Moreover, that one-year period only becomes relevant, if Plaintiffs can prove that Latshaw willfully violated the FLSA entitling them to recover damages for a three year period beginning September 1, 2016 - a burden Plaintiffs cannot meet.

[2] Latshaw maintains that each of the Plaintiffs is also exempt pursuant to the executive exemption. Because Plaintiffs are exempt as highly compensated employees, this motion does not address Plaintiffs' exemption as executives, Latshaw does not waive its right to offer evidence at trial with regard to Plaintiffs' under the executive exemption.

during his employment at Latshaw and by extension did not earn wages in New Mexico.  Two other plaintiffs admit that they did not pay taxes in New Mexico.  Second, plaintiffs do not satisfy the conditions precedent to recover wages under the NMMWA. Several plaintiffs quit and were not discharged, and none of the plaintiffs made demand on Latshaw for unpaid wages. Indeed, the Amended Complaint does not allege that a demand was made.  Consequently, plaintiffs cannot recover unpaid overtime under the NMMWA.

Lastly, Plaintiff Randy Best, individually, has alleged unlawful retaliation because he filed a claim under the FLSA.  This claim is predicated on Latshaw's *lawful* determination not to hire Randy Best an Owen's Electric third-party contractor after he was laid off due to poor market conditions.  This decision was made by Travis Hickey, the manager of Latshaw's maintenance department, for good cause and without knowledge that this lawsuit had been filed. This decision was never communicated outside of Latshaw.  Randy Best's retaliation claim is further belied by the fact that other plaintiffs herein continued to work as third party contractors after this lawsuit was filed and/or were invited to return to Latshaw's employ when market conditions improved. Simply, there is no nexus between Latshaw's decision not to re-employ Randy Best and the filing of this lawsuit.

Summary judgment in favor of Latshaw is appropriate on each of Plaintiffs' claims.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     On April 21, 2016, named Plaintiffs Luther Sanders ("Sanders") and Randy Best ("Best," collectively referred to herein with Sanders as the "Named Plaintiffs") filed this action, seeking unpaid overtime wages under §16(b) of the FLSA, 29 U.S.C. §216(b), on behalf of

themselves and other allegedly similarly situated salaried oilfield mechanical and electrical workers employed by Latshaw.[3]

      2.      On September 12, 2016, the Court granted conditional certification of a class of "salaried oilfield mechanical and electrical workers employed by Latshaw" from August 26, 2013 to September 2016.[4]

      3.      Eight maintenance department technicians have opted-in to this lawsuit: [5]

| Putative Class Member | Job Title | Dates of Employment[6] |
|---|---|---|
| Best, Randy | Top-Drive Technician | 07/22/2013 to 03/31/2016 |
| Bonner, Kendall | Top-Drive Technician | 12/04/2013 to 01/10/2017 |
| Favor, Gary | Top-Drive Technician | 12/04/2013 to 10/09/2014 |
| Helenberger, James | Electrician | 07/15/2011 to 03/21/2016 |
| Hicks, Jason | Top-Drive Technician | 01/07/2010 to 11/04/2013 |
| Sanders, Luther | Top-Drive Technician | 07/31/2013 to 04/03/2016 |
| Spradlin, Shane | Top-Drive Technician | 04/01/2013 to 11/27/2014 |
| Stegall, Mike | Mechanic | 08/06/2013 to 04/18/2015 |

Kendall Bonner ("Bonner"), Gary Favor ("Favor"), Jason Hicks ("Hicks"), Shane Spradlin ("Spradlin"), James Helenberger ("Helenberger") and John Stegall ("Stegall") are collectively referred to herein as the "Opt-In Plaintiffs" and referred to collectively with the Named Plaintiffs as the "Plaintiffs").

      4.      Plaintiffs were salaried employees and were not paid overtime.  Latshaw paid Plaintiffs bi-weekly, and they received the same base salary amount each pay period regardless of how many hours they worked during that pay period.[7]

---

[3] Original Complaint, Doc. No. 1.  Plaintiffs filed a First Amended Complaint on June 20, 2016, in which Best first alleged an individual claim for retaliation.  First Amended Complaint, Doc. 20.

[4] Order Granting the Parties' Agreed Motion for Conditional Certification, Doc. 25.

[5] Plaintiffs' Notice of Filing Consent, Doc. 6, 23, 27 and 28.  Initially Jeff Kuykendall, Vernon Pierce and Robert Dick also opted in to the collective action, but they later filed notices withdrawing their consent. Plaintiffs' Unopposed Notices of Withdrawal of Consent, Doc. 26, 20 and 43.

[6] **LDC APPX 0001** [Ex. 1, Affidavit of Mark Cochran ("Cochran Aff."), at ¶4.]

**Latshaw's Business and Reporting Structure**

5.      Latshaw is a privately held drilling company located in Tulsa, Oklahoma.[8] It provides drilling services to different well operators.  Since 2013, Latshaw has provided drilling services to more than 40 operators on more than 750 wells in multiple states, including Texas, Oklahoma and New Mexico.[9] Operators pay Latshaw based on the daily cost of operating the rigs.[10]  Latshaw has 41 marketable rigs and 24 rigs currently operating.[11]

6.      Drilling rigs can be massive structures housing equipment used to drill water wells, oil wells, or natural gas extraction wells.  Each rig is made up of complex mechanical and electrical systems, including but not limited to motors, pumps, valves, drives, draw-works, etc.….



**Figure 1 – Anatomy of a Drilling Rig**[12]

---

[7] **LDC APPX 00001** [Ex. 1, Cochran Aff., at ¶3]
[8] **LDC APPX 00001** [Ex. 1, Cochran Aff., at ¶3]
[9] **LDC APPX 00001** [Ex. 1, Cochran Aff., at ¶3]
[10] **LDC APPX 00006** [Ex. 2, Amanda Reid Deposition, taken June 8, 2017 ("Reid Depo 1")  at 29:14-22]
[11]**LDC APPX 00007** [Ex. 2, Reid Depo 1 at 30:3-16]
[12]The equipment associated with a rig is to some extent dependent on the type of rig but typically includes at least some of the following items shown in Figure 1: 1) mud tank; 2) shale shakers; 3) suction line (mud pump); 4) mud pump; 5) motor or power source; 6) hose; 7) draw-works; 8) standpipe; 9) Kelly hose; 10) goose-neck; 11) traveling block; 12) drill line; 13) crown block; 14) derrick; 15) racking board

7.      The **top drive (shown as #18 – Fig. 1)** is a mechanical device on a drilling rig that provides clockwise torque to the drill string to facilitate the process of drilling a borehole. Simply, it is "the drill that drills the hole."[13]

8.      Latshaw's rigs typically utilize top drive systems manufactured by Canrig and National Oilwell Varco ("NOV" or "Varco").   A Canrig top-drive is approximately 45,000 pounds and thirty-two feet in length.[14]   Varco top-drives range from 28,000 pounds to 38,000 pounds and are approximately eighteen to twenty feet in length.[15]

9.      A new top drive costs in the neighborhood of $1,800,000.00, and a used top drive can cost between $750,000.00 to $1,200,000.00.[16]

10.      If any of these sophisticated rig parts are not operating properly, this can result in the rigs shutting down and causing what is called, in the vernacular "downtime." Downtime is when Latshaw has all of its employees on a rig, but the rig cannot operate because of a problem with its equipment.[17] Because Latshaw is paid a day rate, downtime equals lost revenue plus other intangible costs, *i.e.,* customer frustration.[18]

---

(monkey board); 16) stand of drill pipe; 17) setback (floor); 18) swivel (on newer rigs this is replaced by a top drive); 19) Kelly drive; 20) rotary table; 21) drill floor; 22) bell nipple; 23) blowout preventer (BOP) Annular type; 24) Blowout preventer (BOP) Pipe ram & blind ram; 25) drill string; 26) casing head or wellhead; 267 flow line; 28) flow line. https://en.wikipedia.org/listofcomponentsofoildrillingrigs (19 June 2018).

[13] **LDC APPX 00038** [Ex. 3, Deposition of Jean Gallander, taken  November 9, 2017 ("Gallander Depo") at 31:10-13]

[14] **LDC APPX 00036** [Ex. 3, Gallander Depo at 29:16-31:5]

[15] *See id.*

[16] **LDC APPX 00107** [Ex. 3, Gallander Depo at 194:17-22]

[17] **LDC APPX 00008** [Ex. 2, Reid Depo 1 at 31:5-18]; **LDC APPX 00117** [Ex. 4, Deposition of James Helenberger, taken on January 2, 2018, ("Helenberger Depo") at 69:7-25]

[18] **LDC APPX 00008** [Ex. 2, Reid Depo 1 at 31:21-32:14]

11.     Latshaw maintains a maintenance department, the common goal of which is to prevent downtime.[19]   Latshaw's maintenance department is made up of three separate work groups or divisions: top-drive technicians, mechanics, and electricians.[20]

12.     Latshaw's top-drive technicians manage the maintenance of the top drives on the rigs. Electricians manage the maintenance of all electrical functions of the rigs, and mechanics manage the maintenance of all mechanical components of the rigs (except the top-drive), including the motor and hydraulic systems.[21]   Electricians and mechanics do not touch the top drive.[22]   Thus, top-drive technicians, mechanics and electricians manage *separate systems*, each have *separate duties* and report to *separate superintendents*.[23]

13.     During the relevant period, the top-drive technicians reported to Latshaw's top-drive superintendent Jean Gallander.[24]   Mechanics reported to Latshaw's mechanics' superintendent Ron Funderburg[25] and electricians reported to Latshaw's electricians' superintendent Dwayne Wilson.[26]   Travis Hickey is the head of Latshaw's maintenance department.[27]

---

[19] **LDC APPX 00160-00161** [Ex. 5, Deposition of Erin Helvey, taken October 5, 2017, ("Helvey Depo") 156:2-157:8]; **LDC APPX 00023** [Ex. 2, Reid Depo 1 at 205:12-17]
[20] **LDC APPX 00051** [Ex. 3,  Gallander Depo at 44:1-7]
[21] **LDC APPX 00137, 00139-00141, 00162-00163** [ Ex. 5, Helvey Depo at 36:20-25, 45:21-46:2, 46:20-47:14, 166:9-167:12], and **LDC APPX 00165** [Ex. 5, Excerpt from Helvey Depo Ex. 117 (identifying rig systems mechanics manage)]
[22] **LDC APPX 00086-00087** [Ex 3,  Gallander Depo 98:21-99:3]; **LDC APPX 00174-00175** [Ex. 6, Deposition of Ronald Funderburg, taken October 6, 2017 ("Funderburg Depo") at 36:16-37:6]
[23] **LDC APPX 00016-00017** Ex. 2, Reid Depo 1 at 54:22-55:5]; **LDC APPX 00170** Ex. 6, Funderburg Depo 24:17-21. ]
[24] **LDC APPX 00011** [Ex. 2, Reid Depo 1 at  42:15-25]
[25] **LDC APPX 00013-00014** [Ex. 2, Reid Depo 1 at 44:15-45:11]; **LDC APPX 00171, 00172-00173** [Ex. 6, Funderburg Depo 25:14-24, 26:23-27:2]
[26] Dwayne Wilson no longer works at Latshaw.  The current Mechanics Superintendent is Erin Helvey. Plaintiff Stegall worked with Erin Helvey as a mechanic during the relevant period. **LDC APPX 00012-00013** [Ex.  2, Reid Depo 1 43:1-44:14]; **LDC APPX 00136** [Ex. 5, Helvey Depo 29:2-11]; and **LDC APPX 00189** Exhibit 7, Deposition of John Mike Stegall, taken October 10, 2017 ("Stegall Depo") 50:3-13].
[27] **LDC APPX 00010** [Ex. 2, Reid Depo 41:22-24].

**Plaintiffs' Duties**

14.     Plaintiffs worked a rotation (commonly referred to as a "hitch") of ten days on and five days off.[28]

15.     Plaintiffs tracked their work on daily reports that were submitted to their supervisors.[29]

16.     Top-drive technicians, electricians and mechanics are the highest-ranking Latshaw maintenance employees in the field.[30]

> …[Latshaw's] goal as a maintenance department is to not fire fight.   Travis and his group, who have worked very hard to institute preventative maintenance, which are part of the -- some of annual reviews and monthly inspections that we talked about today, are evidence of that where they go out, assess, look at, you know, all of these pieces of equipment to insure that we can avoid the fires.  And that's part of the reason that Latshaw Drilling has a little over 2 percent downtime, which is far below industry average is because of that preventative maintenance focus.
>
> Now, as we've also seen in the daily reports, fires happen and these guys do go out there and take over the operation such that everyone is focused in helping them get this piece of equipment, whatever it is, back online so that we can resume drilling.  So I would say that the maintenance staff are -- are a little bit of both. They're -- they're teachers. They're assessors.  They're instructors. They're helpers and they're also firefighters.[31]

---

[28] **LDC APPX 00018** [Ex. 2, Reid Depo 1 at 56:1-3]; **LDC APPX 00145** [Ex. 5, Helvey Depo 78:8-10]
[29] **LDC APPX 00201** [Ex. 8, Best's Daily Reports]; **LDC APPX 00337** [Ex. 9, Sander's Daily Reports]; **LDC APPX 00407** [Ex. 10, Bonner's Daily Reports]; **LDC APPX 00490** [Ex. 11, Favor's Daily Reports]; **LDC APPX 00554** [Ex. 12, Hick's Daily Reports]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports]; **LDC APPX 00710** [Ex. 14, Helenberger's Daily Reports]; and **LDC APPX 00731** [Ex. 15, Stegall's Daily Reports]
[30] **LDC APPX 00002** [Ex. 1, Cochran Aff., at ¶7].  Bonner testified that working on top drives is the "highest you can go from a career standpoint." **LDC APPX 00779** [Ex. 16, Deposition of Kendall Bonner, taken July 19, 2017 ("Bonner Depo" at 43:22-44:7]
[31] **LDC APPX 00024-00025** [Ex. 2, Reid Depo 1 at 252:13-253:8]

The duties of these technicians are prioritized to avoid downtime.[32]

17.    Plaintiffs functioned as project managers – and their primary duty was planning and overall execution of preventative maintenance for rigs to avoid downtime.[33] Performing the actual repairs is not the Plaintiffs' most important duty.[34] Plaintiffs are expected to be proactive, which means

> …he would go out there, he'd checked on the rigs.  He's also going to be not just preventative, he's going to be training.  He's going to check with rig managers.  He's going to check with the drillers and see if there's lacking in training.[35]

18.    On any given day, preventative maintenance that Plaintiffs' regularly and customarily performed on the rigs included the following: inspecting and assessing rigs as they currently stand and as they will need to be serviced in the future,[36] troubleshooting problems,[37]

---

[32] **LDC APPX 00023** [Ex. 2, Reid Depo 1 at 205:12-17]; **LDC APPX 00795** [Ex. 17, Deposition of Jason Hicks ("Hicks Depo") at 163:2-19 (describing work as "pivotal - more than important"…"If you're not drilling -- you're not making money)]

[33] **LDC APPX 00082-00083** [Ex. 3, Gallander Depo at 94:12-19; 95:3-17]; **LDC APPX 00818** [Ex. 18, Deposition of James Spradlin ("Spradlin Depo") at 197:6-13; **LDC APPX 00194, 00195** [Ex. 7, Stegall Depo at 216:11-13; 218:11-22; **LDC APPX 00132-00133** [Ex. 4, Helenberger Depo at 212:19-213:9]

[34] **LDC APPX 00081** [Ex. 3, Gallander Depo at 93:23-94:2]

[35] **LDC APPX 00091** [Ex. 3, Gallander Depo at 122:3-15]

[36] **LDC APPX 00034** [Ex. 3, Gallander Depo at 27:6-24]; **LDC APPX 00146** [Ex. 5, Helvey Depo at 79:7-10]; **LDC APPX 00201** [Ex. 8, Best's Daily Reports]; **LDC APPX 00337** [Ex. 9, Sander's Daily Reports]; **LDC APPX 00407** [Ex. 10, Bonner's Daily Reports]; **LDC APPX 00490** [Ex. 11, Favor's Daily Reports]; **LDC APPX 00554** [Ex. 12, Hick's Daily Reports]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports]; **LDC APPX 00710** [Ex. 14, Helenberger's Daily Reports]; and **LDC APPX 00731** [Ex. 15, Stegall's Daily Reports]; **LDC APPX 00937** [Ex. 21, Sample Rig Move Inspection Checklist - P000146-000148]

[37] **LDC APPX 00087-00088** [Ex. 3, Gallander Depo 99:8-14, 99:25-100:5]; **LDC APPX 00917** [Ex. 20, Deposition of Travis Hickey, taken June 9, 2017 ("Hickey Depo") at 93:6-9]; **LDC APPX 00146** [Ex. 5, Helvey Depo at 79:3-6]; **LDC APPX 00179** [Ex. 6, Funderburg Depo at 47:9-14]; **LDC APPX 00951, 00956** [Ex. 22, Deposition of Randy Best, taken June 2, 2017, ("Best Depo") at 84:16-25, 135:16-20 (on the phone pretty much all the time)]; **LDC APPX 00984-00985** [Ex. 23, Deposition of Gary Favor, taken December 21, 2017 ("Favor Depo") at 184:7-185:2 (regularly on phone and troubleshooting)]; **LDC APPX 00199** [Ex. 7, Stegall Depo at 267:8-16 (always on the phone)]; **LDC APPX 00201** [Ex. 8, Best's Daily Reports]; **LDC APPX 00337** [Ex. 9, Sander's Daily Reports]; **LDC APPX 00407** [Ex. 10, Bonner's Daily Reports]; **LDC APPX 00490** [Ex. 11, Favor's Daily Reports]; **LDC APPX 00554** [Ex. 12, Hick's Daily Reports]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports]; **LDC APPX 00710** [Ex. 14, Helenberger's Daily Reports]; and **LDC APPX 00731** [Ex. 15, Stegall's Daily Reports].

procuring necessary parts,[38] engaging third-party vendors and overseeing their work,[39] training Latshaw drilling crew members on proper maintenance procedures,[40] repairing and/or rebuilding equipment,[41] testing equipment,[42] reporting back to the corporate office as to the status of the rigs functioning by completing daily reports, as well as planning work for when they return on their next rotation, leaving hand-over notes for the next technician who steps into their place,[43]

---

[38] **LDC APPX 00105-00106** [Ex. 3, Gallander Depo at 184:9-185:1]; **LDC APPX 00149** [Ex. 5, Helvey Depo at 124:4-9]; **LDC APPX 00183-00184** [Ex. 6, Funderburg Depo at 123:21-124:17]; **LDC APPX 00975** [Ex. 23, Favor Depo. at 64:14-22]; **LDC APPX 00836, 00837-00838** [Ex. 19, Helenberger Depo at 183:1-15, 184:16-185:21]; **LDC APPX 00201** [Ex. 8, Best's Daily Reports]; **LDC APPX 00337** [Ex. 9, Sander's Daily Reports]; **LDC APPX 00407** [Ex. 10, Bonner's Daily Reports]; **LDC APPX 00490** [Ex. 11, Favor's Daily Reports]; **LDC APPX 00554** [Ex. 12, Hick's Daily Reports]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports]; **LDC APPX 00710** [Ex. 14, Helenberger's Daily Reports]; and **LDC APPX 00731** [Ex. 15, Stegall's Daily Reports]

[39] **LDC APPX 00080, 00109-00110** [Ex. 3, Gallander Depo at 87:5-21, 197:25-198:2,16-25]; **LDC APPX 00891-00894** [Ex. 20, Hickey Depo at 43:17-46:19; 129:9-22]; **LDC APPX 00138, 00155, 00156, 00157, 00158-00159** [Ex. 5, Helvey Depo at 42:2-12, 146:4-22, 149:11-22, 150:4-16; 152:12-153:8]; **LDC APPX 0091-00993** [Ex. 24, Deposition of Joey Stockton ("Stockton Depo at 28:6-14, 29:8-10, 30:13-15)]; **LDC APPX 00786-00787** [Ex. 16, Bonner Depo. at 150:15-151:2 (questioned results of 3rd party inspection because he felt like they were trying to create work)]; **LDC APPX 00998-01006** [Ex. 25, Email string re Rig 42 Cat Walk - Latshaw 004170-4718 (example of Bonner managing 3rd party work)]; **LDC APPX 00201** [Ex. 8, Best's Daily Reports]; **LDC APPX 00337** [Ex. 9, Sander's Daily Reports]; **LDC APPX 00407** [Ex. 10, Bonner's Daily Reports]; **LDC APPX 00490** [Ex. 11, Favor's Daily Reports]; **LDC APPX 00554** [Ex. 12, Hick's Daily Reports]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports]; **LDC APPX 00710** [Ex. 14, Helenberger's Daily Reports]; and **LDC APPX 00731** [Ex. 15, Stegall's Daily Reports]

[40] **LDC APPX 00092-00093** [Ex. 3, Gallander Depo at 123:25-124:7 (*i.e.*, be there for rig up and rig down and instruct on how to properly rig up or down or operate the equipment), 131:22-132:6]; **LDC APPX 00142-00143** [Ex. 5, Helvey Depo at 73:9-74:11]; **LDC APPX 00808** [Ex. 18, Spradlin Depo at 147:1-6 (teaches people how to maintain the top drive)]; **LDC APPX 00192-00193** [Ex. 7, Stegall Depo. at 202:24-203:3];**LDC APPX 00201** [Ex. 8, Best's Daily Reports]; **LDC APPX 00337** [Ex. 9, Sander's Daily Reports]; **LDC APPX 00407** [Ex. 10, Bonner's Daily Reports]; **LDC APPX 00490** [Ex. 11, Favor's Daily Reports]; **LDC APPX 00554** [Ex. 12, Hick's Daily Reports]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports]; **LDC APPX 00710** [Ex. 14, Helenberger's Daily Reports]; and **LDC APPX 00731** [Ex. 15, Stegall's Daily Reports]

[41] **LDC APPX 00932** [Ex. 20, Hickey Depo at 124:10]; **LDC APPX 000146** [Ex. 5, Helvey Depo at 79:11-25]

[42] **LDC APPX 00089** [Ex. 3, Gallander Depo at 112:18-22]; **LDC APPX 00201** [Ex. 8, Best's Daily Reports]; **LDC APPX 00337** [Ex. 9, Sander's Daily Reports]; **LDC APPX 00407** [Ex. 10, Bonner's Daily Reports]; **LDC APPX 00490** [Ex. 11, Favor's Daily Reports]; **LDC APPX 00554** [Ex. 12, Hick's Daily Reports]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports]; **LDC APPX 00710** [Ex. 14, Helenberger's Daily Reports]; and **LDC APPX 00731** [Ex. 15, Stegall's Daily Reports]

[43] **LDC APPX 00957** [Ex. 22, Best Depo at 139:12-16]; **LDC APPX 01007-01014** [Ex. 26, Email from Bonner, dated November 9 and 10, 2016 - Latshaw 0004729-004736]; **LDC APPX 00201** [Ex. 8, Best's Daily Reports]; **LDC APPX 00337** [Ex. 9, Sander's Daily Reports]; **LDC APPX 00407** [Ex. 10,

completing inventories, expense and other reports,[44] collaborating on checklists,[45] recommending new hires and giving feedback regarding drilling crew members that assisted them,[46] and they need working knowledge of Microsoft Office and Excel.[47]

19.     Plaintiffs had wide latitude and discretion in how they performed their duties.[48] "They need to be able to do their job without me telling them that they need to go from A to B to C."[49] Two techs could manage the same issue on a rig totally different.[50]   The techs are "not robots."[51]   They are required to "think outside the box."[52]

---

Bonner's Daily Reports]; **LDC APPX 00490** [Ex. 11, Favor's Daily Reports]; **LDC APPX 00554** [Ex. 12, Hicks' Daily Reports]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports]; **LDC APPX 00710** [Ex. 14, Helenberger's Daily Reports]; and **LDC APPX 00731** [Ex. 15, Stegall's Daily Reports]

[44] **LDC APPX 00933** [Ex. 20, Hickey Depo at 111:6-16, 125:4-10]; **LDC APPX 00792** [Ex. 16, Bonner Depo at 204:2-10 (did more paperwork at Latshaw than other jobs)]; **LDC APPX 00118** [Ex. 4, Helenberger Depo at 93:1-6 (paperwork was "extensive")]; **LDC APPX 00814** [Ex. 18, Spradlin Depo at 191:14-16 (completed 1 to 5 hours of paperwork daily)]; **LDC APPX 00198** [Ex. 7, Stegall Depo at 266:4-9 (3 to 4 hours of paperwork daily)]; **LDC APPX 00201** [Ex. 8, Best's Daily Reports]; **LDC APPX 00337** [Ex. 9, Sander's Daily Reports]; **LDC APPX 00407** [Ex. 10, Bonner's Daily Reports]; **LDC APPX 00490** [Ex. 11, Favor's Daily Reports]; **LDC APPX 00554** [Ex. 12, Hick's Daily Reports]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports]; **LDC APPX 00710** [Ex. 14, Helenberger's Daily Reports]; and **LDC APPX 00731** [Ex. 15, Stegall's Daily Reports]

[45] **LDC APPX 00078, 00031** [Ex. 3, Gallander Depo at 71:3-6, 24-72:5]

[46] **LDC APPX 00108** [Ex. 3, Gallander Depo at 195:16-22]; **LDC APPX 00922-00923, 00924-00927, 00928-00931** [Ex. 20, Hickey Depo at 109:23-110:1, 113:15-20, 114:2-25, 115:12-116:16, 118:2-4, 119:1-18, 24-120:1, 120:20-121:9, 121:16-21 (Latshaw hires its employees from technician recommendations); **LDC APPX 00150-00151, 00152-00153** [Ex. 5, Helvey Depo at 125:19-126:25, 127:13-24, 128:5-19]; **LDC APPX 00182** [Ex. 6, Funderburg Depo at 115:12-22]; **LDC APPX 01043** [Ex. 31, Email string between Best, Bonner and Gallander re need for Trainee - Latshaw 004719]; **LDC APPX 00201** [Ex. 8, Best's Daily Reports]; **LDC APPX 00337** [Ex. 9, Sander's Daily Reports]; **LDC APPX 00407** [Ex. 10, Bonner's Daily Reports]; **LDC APPX 00490** [Ex. 11, Favor's Daily Reports]; **LDC APPX 00554** [Ex. 12, Hicks' Daily Reports]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports]; **LDC APPX 00710** [Ex. 14, Helenberger's Daily Reports]; and **LDC APPX 00731** [Ex. 15, Stegall's Daily Reports]

[47] **LDC APPX 00095-00096** [Ex. 3, Gallander Depo. at 132:24-133:4]

[48] **LDC APPX 00934** [Ex. 20, Hickey Depo at 159:14-17 ("… they run on their own and manage time on their own between themselves….)]; **LDC APPX 00154, 00160-00161** [Ex. 5, Helvey Depo at 138:1-13, 156:2-157:8]; **LDC APPX 00177-00178** [Ex. 6, Funderburg Depo at 43:22-44:10]; **LDC APPX 00090** [Ex. 3, Gallander Depo at 121:6-19 ("They're hired to do a job. I don't have to micromanage.")]; and **LDC APPX 00807** [Ex. 18, Spradlin Depo at 132:16-18 (planned his own day)]

[49] **LDC APPX 00094** [Ex. 3, Gallander Depo. at 131:22-25]

[50] **LDC APPX 00918** [Ex. 20, Hickey Depo. at 101:19-102:6.

[51] *See id.*

[52] **LDC APPX 00918-00921** [Ex. 20, Hickey Depo at 101:19-102:6,17-103:3,13-104:2.

20.     Plaintiff Best testified:

> Q.     Why did you decide to leave Canrig and go to Latshaw?
> A.     Because they were -- got real heavy in micro managing and
>        I'm not very micro manageable.
> Q.     You know what you're doing and you don't need someone
>        bothering you to tell you how to do your business.
> A.     No.
> Q.     Did they micro manage you at Latshaw?
> A.     No, ma'am.
>
> ***
>
> Q.     …were you able to make a lot of decisions on how to fix
>        things as a Latshaw tech.
> A.     Because that's my job.[53]

At times, Best even set his own schedule, including declining to work when requested to do so by his superintendent.[54]

21.     Spradlin testified that he was not hired to just turn a wrench.  He was hired for the "neck up."[55]  Helenberger admits the job required "creativity"[56] and distinguished the rig hands' work from his own as follows:

> A.     "…their job was to physically yank it off and put the new
>        one back in and we would wire it back up."
>
> Q.     So they did the hard work and you did the brain work.
>
> A.     In essence.[57]

Bonner described his work as "mind taxing" and intellectually challenging."[58]  Stegall compared and contrasted himself with the drilling crew - "[the driller] would be like an appendix specialist and I would be more like a brain specialist…[59]

---

[53] **LDC APPX 00948-00949, 00950** [Ex. 22, Best Depo. at 56:21-57:4; 71:23-25.  Best further testified that Latshaw  depended on him to "assess the situation" and fill in Jean Gallander "on the status of the rigs and what maintenance needed to occur.  [*Id.* at 50:3-9]
[54] **LDC APPX 01437** [Ex. 51, Randy Best Email, dated January 14, 2016 - Latshaw 003198]; **LDC APPX 00057-00058** [Ex. 3,  Gallander Depo at 50:5-51:10]
[55] **LDC APPX 00815-00817** [Ex. 18, Spradlin Depo at 194:24-196:6]
[56] **LDC APPX 000120** [Ex. 4, Helenberger Depo at 126:18-127:9]
[57] Id. at 161:13-18.

22.     Indeed, the most important skill a top-drive tech was required to have was "intelligence"[60] and their "brain's their Number 1 tool."[61]

23.     Plaintiffs were also provided a company credit card for making purchases to allow more flexibility and greater ability to manage the rigs they worked on.  The credit card limit was $15,000.[62]

24.     Additionally, Plaintiffs had a $2,500 per single purchase limit that permitted them to buy one of anything that cost less than $2,500 without approval.  Purchases over this limit were permissible with the verbal approval of the Plaintiffs' superintendent.   This purchasing limit was the same limit provided to Rig Managers.[63] Latshaw's operations manager testified that Plaintiffs could exceed that purchasing limit in a rig down situation.[64]

25.     Plaintiffs were required to complete monthly expense reports. "Each month, our accounts payable department sends them a printout of their credit card expenses and we have a summary sheet. You're required to go through that credit card statement and -- and essentially line item, let us know what each of those expenses were for and what call center to charge them to."[65]

**Plaintiffs' Hours**

26.     The daily reports also include a section for Plaintiffs to report the total number of

---

[58] **LDC APPX 00780** [Ex. 16, Bonner Depo at 44:10-14, 64:12-16]
[59] **LDC APPX 00191** [Ex. 7, Stegall Depo at 166:3-13]
[60] **LDC APPX 00084-00085** [Ex. 3, Gallander Depo at 96:24-97:3]
[61] **LDC APPX 00097** [Ex. 3, Gallander Depo at 136:6-8]
[62] **LDC APPX 00974** [Ex. 23, Favor Depo at 60:14-17]; **LDC APPX 00116** [Ex. 4, Helenberger Depo at 66:23-25]; and **LDC APPX 01016-01030** [Ex. 28, Credit Card Statements for Stegall].
[63] **LDC APPX 01031-01035** [Ex. 29, Purchasing Limits at Latshaw 000035, 000993, 002655, 002908, 002894]
[64] **LDC APPX 00994** [Ex. 24, Stockton Depo at 47:7-23]
[65] **LDC APPX 00021-00022** [Ex. 2, Reid Depo 1 at 116:18-117:1]

hours they worked in any particular day of their hitch.[66] Plaintiffs routinely reported that they worked 12 hours, as a default.[67]  As, Favor testified:  it was a "generic number" that they "just stuck in."[68]

27.    Plaintiffs now admit that the hours reported on the daily reports were **"not truthful and honest"** and **they do not know how many hours of overtime they may have worked**.[69]

28.    Specific examples of Plaintiffs' questionable recording of their hours include the following:

> Bonner testified that if he attended a safety meeting that was an 8-hour day, he put 12 hours down on the daily report anyway.[70]
>
> On February 1, 2014, Favor recorded 12 hours for washing his truck and driving to work.[71] The next day, he recorded 12 hours for "bad weather."[72]  And, on May 17 and 18, 2014, Favor recorded two 12 hour days to "tool up [his] truck."[73] He even claims that he once worked 24 hours but still only put down 12.[74] Sanders testified that he put 12 hours even if he worked more.[75]

---

[66] **LDC APPX 00019** [Ex. 2, Reid Depo 1 at 58:24-59:14]; **LDC APPX 01039** [Ex. 30, Sanders Depo. at 219:19-21]; **LDC APPX 00778** [Ex. 16, Bonner Depo. at 19:11-15]; **LDC APPX 00201** [Ex. 8, Best's Daily Reports]; **LDC APPX 00337** [Ex. 9, Sander's Daily Reports]; **LDC APPX 00407** [Ex. 10, Bonner's Daily Reports]; **LDC APPX 00490** [Ex. 11, Favor's Daily Reports]; **LDC APPX 00554** [Ex. 12, Hicks' Daily Reports]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports]; **LDC APPX 00710** [Ex. 14, Helenberger's Daily Reports]; and **LDC APPX 00731** [Ex. 15, Stegall's Daily Reports]
[67] [*Id*.]
[68] **LDC APPX 00980,** [Ex. 23, Favor Depo. at 139:14-17]. *See also,*  **LDC APPX 00812, 00809-00810,** [Ex. 18, Spradlin Depo at 175:14, 169:6-170:1]; **LDC APPX 01037-0138** [Ex. 30, Sanders Depo at 137:22-138:6]
[69] **LDC APPX 00778, 00783, 00784** [Exhibit 16, Bonner Depo. at 19:11-19, 82:19-21 and 102:7-17]; **LDC APPX 00980, 00981-00982, 00978-00979** [Ex.23, Favor Depo at 139:14-17, 150:16-151:2 and 116:22-117:1]; **LDC APPX 0138** [Ex. 30, Sanders Depo at 138:3-9]; **LDC APPX 00125-00127** [Ex. 4, Helenberger Depo at 169:20-171:21]; **LDC APPX 00801-00802, 00812, 00809,** [Ex. 18, Spradlin Depo at 27:23-28:8, 175:14, 169:6-170:1 and 174:21-175:3]; **LDC APPX 00965, 00956-00957** [Ex. 22, Best Depo at 171:2-13, 197:14-198:5] **LDC APPX 00201** [Ex. 8 Best Daily Reports at 1101].
[70] **LDC APPX 00783** [Ex. 16, Bonner Depo at 82:19-21.
[71] **LDC APPX 00490**  [Ex. 11, Favor's Daily Reports, at Latshaw 006673]
[72] [Id. at Latshaw 006677]
[73] [*Id.*at Latshaw 006785 and 006788]
[74] **LDC APPX 00981-00982** [Ex. 23, Favor Depo at 150:16-151:2]
[75] **LDC APPX 01037-01038** [Ex. 30, Sanders Depo at 137:22-138:6]

Helenberger testified that where he did not identify how many hours he worked, we should assume he worked 12 hours.[76]

Spradlin admitted that if he worked 8 hours he doesn't know if he wrote down 12.[77] In fact, his daily reports reflect obvious examples where his hours are overstated. On May 13, 2014, Spradlin "took a self-imposed light duty day" because he was "just out of shape as hell," but he still recorded 12 hours.[78] Again, on August 11, 2014, Spradlin recorded 12 hours of work despite noting his "activities [were] light" due to "health problems."[79]

Best readily admits that he did not work 12 hours every day but often recorded 12 hours as his time worked anyway.[80] For example, on day 10 of his rotation Best's daily report reflects "Drive home for days off." He recorded 12 hours but admits that it did not take him 12 hours to drive home.[81] Sometimes, Best did not record his hours because he "wasn't sure what to put in it."[82]

29.    Latshaw did not require Plaintiffs to work a minimum number of hours in a day,[83] but they were not permitted to work more than 12 hours without obtaining permission.[84] No one told Plaintiffs to write down 12 hours as a default.[85]

30.    Latshaw top-drive and electrical superintendents testified that most of the techs probably put in 8-hour days.[86] The mechanic superintendent testified that mechanics likely worked a 9 to 10 hour day on average.[87]

---

[76] **LDC APPX 00125-00127** [Ex. 4, Helenberger Depo at 169:20-171:21]
[77] **LDC APPX 00811-0812** [Ex. 18,  Spradlin Depo at 174:21-175:3]
[78] **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports, at Latshaw 010041]
[79] [Id.at Latshaw 009660]
[80] **LDC APPX 00965, 00966** [Ex. 22,  Best Depo at 171:2-13, 197:21-24]
[81] [Id. at 197:14-20]; LDC APPX 00201-00336, Ex. 8, Randy Best's Daily Reports
[82] **LDC APPX 00966-00967** [Ex. 22, Best Depo at 197:21-198:5]
[83] **LDC APPX 00887** [Ex. 20, Hickey Depo at 39:5]; **LDC APPX 00098-00099** [Ex. 3, Gallander Depo at 164:24-165:8]; **LDC APPX 00144** [Ex. 5, Helvey Depo at 76:5-7]; **LDC APPX 00018** [Ex. 2, Reid Depo 1 at 56:4-22]
[84] **LDC APPX 00886, 00889-00890** [Ex. 20, Hickey Depo at 38:23, 41:4-42:14]; **LDC APPX 00049, 00055** [Ex. 3, Gallander Depo at 42:1-17; 48:4-18]; **LDC APPX 00180-00181,** [Ex. 6, Funderburg Depo at 107:15-108:24]
[85] **LDC APPX 00101,** [Ex. 3, Gallander Depo at 171:8-25].
[86] **LDC APPX 0100,** [Ex. 3, Gallander Depo at 169:2]; **LDC APPX 00176,** [Ex. 6, Funderburg Depo at 38:3-10]
[87] **LDC APPX 00147-00148,** [Ex. 5, Helvey Depo at 86:25-87:13]

31.     Plaintiffs' counsel characterized the hours recorded in Plaintiffs' daily reports as "more of an attendance marker" than the number of hours actually worked.[88]

**Plaintiffs Received Total Annual Compensation Over $100,000**

### Sanders

32.     Latshaw hired Sanders on July 31, 2013, at a starting salary of $75,000 annually as a Jr. Top Drive Technician in the maintenance department.[89]  This translated to a bi-weekly salary of  $2,884.62.[90]

33.     Sanders received a pay raise on November 6, 2013 to $85,000.[91] On August 1, 2014, Sanders was promoted to Top Drive Technician and his pay was raised to $100,000.[92] This translated to a bi-weekly salary of $4,096.17.[93]  At no time thereafter did Sanders make less than $100,000 per year.[94]

34.     Sanders quit on April 1, 2016 by providing notice to his superintendent Jean Gallander.[95]

### Best

35.     Latshaw hired Best on July 22, 2013 at a starting salary of $106,000 annually as a Top Drive Technician in the maintenance department.[96]  This translated to a bi-weekly salary of $4,076.92.[97]

---

[88] **LDC APPX 00101-00102** [Ex. 3, Gallander Depo at 171:13-172:4.
[89] **LDC APPX 00002** [Ex. 1, Cochran Aff., at ¶8]
[90] **LDC APPX 01044-0160** [Ex. 32, Sanders' Payroll Records at  Latshaw 000001-000017]
[91] **LDC APPX 01064** [Ex. 33, Sanders' Personnel Records at Latshaw 000027]
[92] **LDC APPX 01063** [Ex. 33, Sanders' Personnel Records at Latshaw 000026]
[93] **LDC APPX 01044-01060** [Ex. 32, Sanders' Payroll Records]
[94] **LDC APPX 00001** [Ex. 1, Cochran Aff., at ¶8]
[95] **LDC APPX 01061-01062** [Ex. 33, Sanders' Personnel Records at Latshaw 000018, 000019]

36.     Best received pay raises on October 30, 2013 to $112,000 and again on August 1, 2014 to $120,000.[98]

37.     Best was laid off on March 21, 2016 due to poor market conditions.[99]  Latshaw did not contest Best's unemployment claim with the Texas Workforce commission.[100]

**Spradlin**

38.     Latshaw hired Spradlin on March 8, 2013 at a starting salary of $106,000 annually as a Top Drive Technician in the maintenance department.[101] This translated to a bi-weekly salary of $4,076.92.[102]

39.     During his employment, Spradlin received pay raises on July 16, 2013 to $112,000 annually and on April 16, 2014 to $120,000.[103] At no time was he paid less than $100,000.[104]

40.     Spradlin quit on November 27, 2014 after he fell and hurt his back in the hotel.[105] He advised that he was "just done with work and going home."[106]

**Bonner**

---

[96] **LDC APPX 00002** [Ex. 1, Cochran Aff., at ¶8]
[97] **LDC APPX 01065-01083** [Ex. 34, Best's Payroll Records at Latshaw000998-001016 ]
[98] **LDC APPX 01084-01087** [Ex. 35, Best's Personnel Records at Latshaw 000986 and 000985]
[99] [*Id.* at Latshaw 000981]
[100] [*Id.* Latshaw 000980]
[101] **LDC APPX 010281** [Ex. 36, Spradlin's Personnel Records at Latshaw 010281]
[102] **LDC APPX 01093-01139** [Ex. 37, Spradlin's Payroll Records at Latshaw 002775-002821]
[103] **LDC APPX 01089-01090** [Ex. 36, Spradlin's Personnel Records at Latshaw 002827, 002826]
[104] **LDC APPX 00800, 00803-00804, 00805, 00806** [Ex. 18, Spradlin Depo at 25:11-12; 39:21-40:5, 47:15-21; 48:5-7]; and **LDC APPX 01088-01092** [Ex. 36, Spradlin's Personnel Records at Latshaw 004082.
[105] **LDC APPX 01092** [Ex. 36, Spradlin's Personnel Records at Latshaw 002823]
[106] [*Id.*]

17

41.     Latshaw hired Bonner on December 4, 2013, at a starting salary of $106,000 annually as a Top Drive Technician in the maintenance department.[107]  This translated to a bi-weekly salary of $4,076.92[108]

42.     During his employment, Bonner's salary was raised to $112,000 on March 5, 2014, after his first 90 days of employment.[109]  Due to poor market conditions his salary was cut to $103,140.34.[110]  At no time, did Bonner make less than $100,000.[111]

43.     On January 10, 2017, Bonner was terminated as a "No Show/No Call" because he failed to answer multiple calls in a rig down situation.[112]  Bonner had previously received coaching for leaving work without authorization.[113]

**Favor**

44.     Latshaw hired Favor in December of 2013 at a starting salary of $106,000 as a Top Drive Technician in the maintenance department.[114]  This translated to a bi-weekly salary of $4,076.92.[115]  After 90 days of employment, Favor's salary was increased to $112,000.[116]  On October 9, 2014, Favor was terminated pending a medical release.[117]

**Hicks**

---

[107] **LDC APPX 00002** [Ex. 1, Cochran Aff. at ¶8]
[108] **LDC APPX 01140-01223** [Ex. 38, Bonner's Payroll Records at Latshaw 002549-002632]
[109] **LDC APPX 01230** [Ex. 39, Bonner's Personnel Records at Latshaw 002648]; **LDC APPX 00782** [Ex. 16, Bonner Depo at 78:20-22]
[110] **LDC APPX 01229** [Ex. 39, Bonner's Personnel Records at Latshaw 002639]
[111] **LDC APPX 00002** [Ex. 1, Cochran Aff. at ¶8].
[112] **LDC APPX 01224-01227** [Ex. 39, Bonner's Personnel Records at Latshaw 002633-002636]
[113] **LDC APPX 01228** [Ex. 39, Bonner's Personnel Records at Latshaw 0002637]
[114] **LDC APPX 00972** [Ex. 23, Favor Depo at 38:18-19; and **LDC APPX 01233** [Ex. 40, Favor's Personnel Records at Depo. Ex. 144 -Offer Letter]
[115] **LDC APPX 01234-01260** [Ex. 41, Favor's Payroll Records at Latshaw 002867-002899].
[116] **LDC APPX 01232** [Ex. 40, Favor's Personnel Records at Latshaw 002887]
[117] **LDC APPX 01231** [Ex. 40, Favor's Personnel Records at Latshaw 002869]

18

45.     Latshaw hired Hicks on January 7, 2010, at a starting salary of $110,000 as a Top Drive Technician in the maintenance department.[118]  This translated to a bi-weekly salary of $4,615.38.[119] During his employment he received salary increases to $120,000.[120] Hicks quit Latshaw on November 4, 2013, without sufficient notice, for a position at another company.[121]

**Helenberger**

46.     Latshaw hired Helenberger in July of 2011 at a starting salary of $100,000 annually as an Electrician in the maintenance department.[122]  This translated to a bi-weekly salary of $4,096.17.[123]

47.     In his resume provided to Latshaw, Helenberger stated that he had "[m]ore than 23 years of experience in all phases of the electrical field."[124]  And, "[o]ver 20 years as an Effective Supervisor and Trainer of Subordinates."[125]

48.     Helenberger additionally highlighted his skills in "troubleshooting" and proficiency in "Windows, Word, Excel, Outlook, PowerPoint, Access, Word Perfect, and the Honeywell programs: Web Builder, Quick Builder and EBI."[126]

49.     During his employment with Latshaw, Helenberger's salary was increased to $114,000, and at no time did he ever make less than $100,000.[127]

---

[118] **LDC APPX 00794** [Ex. 17, Hicks' Depo at 7:22-8:4.
[119] **LDC APPX 1261-1279** [Ex. 42, Hicks' Payroll Records at Latshaw 003046-003063]
[120] [*Id*]
[121] **LDC APPX 1280** [Ex. 43, Hicks' Personnel Records at Latshaw 003064]
[122] **LDC APPX 00002** [Ex. 1, Cochran Aff. at ¶8]
[123] **LDC APPX 1281-1364** [Ex. 44, Helenberger's Payroll Records at Latshaw 002660-002744]
[124] **LDC APPX 01366** [Ex. 45, Helenberger's Personnel Records at  Latshaw 002750]
[125] [*Id.*]
[126] [*Id.*]
[127] **LDC APPX 00827** [Ex. 19, Helenberger Depo. at 120:12-19; and **LDC APPX 01368** [Ex. 45, Helenberger's Personnel Records at Latshaw 002766]

50.     Helenberger was laid off on March 22, 2016 due to poor market conditions.[128] Latshaw did not contest Helenberger's unemployment claim with the Texas Workforce commission.[129]

**Stegall**

51.     Latshaw hired Stegall on July 19, 2013 at a starting salary of $110,000 annually as a Mechanic in the maintenance department.[130]  This translated to a bi-weekly salary of $4,615.38.[131]

52.     In his resume provided to Latshaw, Stegall represented that he was "skilled, dedicated and educated with over twenty years in mechanical and management experience."[132]

53.     In particular, he touted the following experience:

> Plan and schedule with employees their daily location, operational and administrative functions.
>
> Proven track record accurately managing employees ... and hiring/terminating employees;
>
> Oversee the maintaining of inventory and ordering of parts for the completion of a project;
>
> Completion of a class on How to Start and Operate a Business.[133]

54.     Stegall received pay raises on October 2013 to $115,000 and again on November 6, 2014 to $120,000.[134]

55.     Stegall quit Latshaw on April 18, 2015 by providing notice to his superintendent Dwayne Wilson.[135]

---

[128] **LDC APPX 01365** [Ex. 45, Helenberger's Personnel Records at Latshaw 002745]
[129] **LDC APPX 01367** [Ex. 45, Helenberger's Personnel Records at Latshaw 002762]
[130] **LDC APPX 00187** [Ex. 7, Stegall Depo at 20:20-21:10]
[131] **LDC APPX 01369-01417** [Ex. 46, Stegall's Payroll Records at Latshaw 002918-002966]
[132] **LDC APPX 01421** [Ex. 47, Stegall's Personnel Records at Latshaw 002916]
[133] [*Id*].
[134] **LDC APPX 01419-01420** [Ex. 47, Stegall's Personnel Records at Latshaw 002902 and 002901]

56.     Plaintiffs' salaries were comparable to the salaries of Rig Managers.[136] In sharp contrast, Latshaw's drilling crew (floor hands, motor hands, derrick hands and drillers,) were paid hourly wages ranging from $22.25 an hour to $30.00 an hour.[137]

57.     In addition to their base salaries, Plaintiffs were provided a company vehicle, a company laptop, a $25 a day per diem, $200 per month cell phone allowance and other benefits.[138]

58.     Plaintiffs did not make demand on Latshaw for payment of unpaid overtime for work performed in New Mexico.[139]

59.     Hicks did not work for Latshaw in New Mexico[140] and Best and Spradlin both testified that they never paid state taxes in New Mexico.[141]

**Best's Retaliation Claim**

60.     Best was laid off on March 21, 2016 due to poor market conditions.[142] Best claims he volunteered for the layoff.:

>     A.      …I think I had five days left on my hitch. And she told me
>             they are not going to give you a severance pay, so if you

---

[135] [*Id.* at Latshaw 002900]

[136] **LDC APPX 00002** [Ex. 1, Cochran Aff. at ¶9]; and **LDC APPX 00830-00831** [Ex. 19, Helenberger Depo., at 139:24:140:2]; **LDC APPX 00196-00197** [Ex. 7, Stegall Depo. at 242:23-243:5]

[137] **LDC APPX 00015** [Ex. 2, Reid Depo 1 at 49:17-21]

[138] **LDC APPX 00002** [Ex. 1, Cochran Aff. at 10]; **LDC APPX 00788** [Ex. 16, Bonner Depo. at 198:24-200:2]

[139] **LDC APPX 00002** [Ex. 1, Cochran Aff. at 11]; **LDC APPX 00968** [Ex. 22, Best Depo at 235:9-18; **LDC APPX 00785** [Ex. 16, Bonner Depo at 116:13-25]; **LDC APPX 00973, 00976-00977** [Ex. 23, Favor Depo at 51:2-5; 110:21-11:6]; and **LDC APPX 01040** [Ex. 30, Sanders Depo at 223:18-224:18; and **LDC APPX 00190** [Ex. 7, Stegall Depo at 52:15-20].

[140] **LDC APPX 00796** [Ex. 17, Hicks' Depo at 78:17-24]

[141] **LDC APPX 00968** [Ex. 22, Best Depo at 235:9-18]; and **LDC APPX 00819** [Ex. 18, Spradlin Depo at 203:3-9]

[142] [*Id.* at Latshaw 000981]

> want to take the five days off you can go home or you can
> stay and work it.

Q:      And, you said I think I'll go home….

A:      I was burnt out.  I was tired. Exhausted.[143]

                              ***

A:      …Another reason is I could take the hit better than
         the other guys.[144]

In 1990 or '91, Best volunteered for layoff during an industry slow-down while he was employed at Tesco.[145]

61.     At the time of his layoff, Best was farming hay and wheat on 160 acres.[146]  He also had 90 head of cattle.[147]

62.     Best also immediately began working as a top drive tech for Owens Electric, Rig Angel and possibly other companies and did work on Latshaw rigs as a third-party in March, April and early May of 2016.[148]

63.     In early May of 2016, Travis Hickey (Latshaw's Maintenance Manager) determined that Best should no longer be permitted to do work on Latshaw rig locations.  Hickey made this determination after several Rig Managers at different rigs complained to him that Best

---

[143] **LDC APPX 00952** [Ex. 22, Best Depo at 107:13-108:2].
[144] **LDC APPX 00953** [Ex. 22, Best Depo at 109:2-21.  Best's superintendent, Jean Gallander, testified that Best did not volunteer for layoff.  He was chosen for the first round of layoffs because she "had to chase him down three times."  He was due for a write up. **LDC APPX 00103-00104** [Ex. 3, Gallander Depo at 178:21-179:23].
[145] **LDC APPX 00946** [Ex. 22, Best Depo at 20:2-10]
[146] **LDC APPX 00943-00944** [Ex. 22, Best Depo at 5:21-6:3]
[147] [*Id.*]
[148] **LDC APPX 01422-01431** [Ex. 48, Best's Third-Party Invoices for Work on Latshaw Rigs at Latshaw 003139-003148]

was exhibiting a bad attitude and was "bad mouthing" Latshaw while he was working at Latshaw

rigs causing problems with the drilling crews.[149]  Hickey explained his decision as follows:

> … so Randy is like any other third party, even though Randy
> worked for us in the past.
>
> I mean really, that's why Randy was laid off and immediately
> allowed back on our rigs to do this work because those were his
> babies.  I mean, that equipment, the rig 17, the rig 5, the rig 20's,
> Randy helped make those top drive systems what they are today.
> So why would I not want that guy on the rig for those for whatever
> issues or rebuilds or projects that were going on?
>
> Yeah, I would not want to send Randy -- or ban him from the rigs,
> but when, you know Latshaw employees are calling me saying,
> hey, I don't want him back on my rig, he's been badmouthing the
> company, I've got a lot of new hands out here that are new to
> Latshaw and they are listening to this guy badmouth the company,
> I don't want him on our location anymore.
>
> So, I have to make the call.  Just like any other third party.  I would
> do the same thing to any other third party.[150]

64.    On May 6th, Hickey emailed Latshaw Rig Managers, maintenance and Joey

Stockton advising:  "Just wanted to let everyone know that Randy Best is no longer allowed on

Latshaw Locations or have any dealings with Latshaw what so ever from this day forward."[151]

This email is the basis of Best's retaliation claim.[152]

65.     Bad mouthing the company is grounds for termination.[153]

66.     Best learned that he was no longer permitted at Latshaw rig locations from

Kendall Bonner.[154]  Importantly, no one at Owens Electric said anything to him.[155]  Nor did any

[149] **LDC APPX 00910-00915** [Ex. 20, Hickey Depo at 62:25-63:12; 63:25-66:5; 67:18-25]
[150] **LDC APPX 00912-00913** [Ex. 20, Hickey Depo at 64:11:65:7]
[151] **LDC APPX 01432-01433** [Ex. 49, Travis Hickey, May 6, 2016 email regarding Randy Best - P00001-00002]
[152] **LDC APPX 00962-00963** [Ex. 22, Best Depo at 166:21-167:15]
[153] **LDC APPX 00935** [Ex. 20, Hickey Depo at 142:18-24]
[154] **LDC APPX 00958** [Ex. 22, Best Depo at 152:19-21]
[155] **LDC APPX 00958** [Ex. 22, Best Depo at 152:22-23]

other drilling company communicate to Best that he could not do work for Latshaw.[156] That's because, Latshaw did not communicate their decision to any third party.[157]

67.   Best continued to work as a top drive tech for various third parties, including but not limited to Owens Electric, PTW and JEA Oil Field Services, Skipper Industries.[158] "It pays the bills. Spoils the grand kids."[159] But, Best chose not to do work for other parties, like Rig Angel[160] and Skipper Industries.[161]

68.   Best started his own top drive maintenance company - RJM Top Drive Repair, LLC on August 29, 2016.[162] Best testified:

> Q:   And how is RJM Top Drive Repair doing?
> A:   It pays the bills[163]

69.   Best admits that Hickey's May 6, 2016 email did not prevent him from working for third-party contractors, only that it prevented him from working for Latshaw.[164]

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue

---

[156] **LDC APPX 00958-00959** [Ex. 22, Best Depo at 152:25-153:2]
[157] **LDC APPX 00916** [Ex. 20, Hickey Depo at 68:8-19 (the May 6th email was the only written communication of his decision and the only other people Hickey communicated his decision to were Jean Gallander and Trent Latshaw)]
[158] **LDC APPX 00945, 00961** [Ex. 22, Best Depo at 16:11-17; 162:16-25]
[159] [*Id.*]
[160] **LDC APPX 00960** [Ex. 22, Best Depo at 157:25-23]
[161] **LDC APPX 00961** [Ex. 22, Best Depo at 162:4:20]
[162] **LDC APPX  01434-01436** [Ex. 50, Certificate of Formation for RJM Top Drive LLC, filed August 29, 2016] and **LDC APPX 00954** [Ex. 22, Best Depo at 118:17-25]
[163] **LDC APPX 00955** [Ex. 22, Best Depo at 119:3-13]
[164] **LDC APPX 00964** [Ex. 22, Best Depo at 169:5-20]

of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has

met its burden, the burden shifts to the non-moving party to "designate specific facts showing

that there is a genuine issue for trial."  *Id.* at 324.


## ARGUMENT AND AUTHORITIES

As demonstrated below, Plaintiffs' own admission establish that Latshaw properly

classified Plaintiffs as exempt under the highly compensated employee and the administrative

exemptions.

### A.  Plaintiffs Are Exempt Under the Administrative Exemption.

The FLSA overtime pay requirements do not apply to an employee employed in a bona

fide administrative capacity. 29 U.S.C. §213(a)(1).[165]  This exemption focuses on whether an

employee's salary and job duties fall within a certain scope set out in the regulations. This

involves a fact-specific inquiry centering on the employee's job duties and compensation.

*Dalheim v. KDFW-TV*, 918 F.2d 1220, 1225-26 (5th Cir. 1990).  The ultimate determination

of employee status, however, is a question of law for the court to decide. *Id.*

The term "employee employed in a bona fide administrative capacity" means any

employee:

    (a)     Compensated on a salary basis at a rate of not less than $455 per week;

---

[165] Section 213(a)(1) provides that its terms are to be "defined and delimited from time to time by regulations of the Secretary [of Labor]."  29 U.S.C. §213(a)(1). The Fifth Circuit has clearly stated that these regulations constitute a body of experience and informed judgment to which the court may properly resort for guidance. *Vela v. City of Houston,* 276 F.3d 659, 667 (5th Cir. 2001).

(b)     Whose **primary duty** is the performance of office or **non-manual work** directly related to the management or **general business operations** of the employer **or the employer's customers**; and

(c)      Whose **primary duty** includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. §541.200(a) (emphasis added).  As set forth in the following sections there is no fact question as to whether Plaintiffs meet this standard.  As a result, the Court should find that the Plaintiffs were exempt and should grant this motion.

### 1.     Plaintiffs Were Each Compensated on a Salary Basis of Not Less than $455 Per Week

It is undisputed that Plaintiffs were paid on a salary basis well above the threshold requirement of $455 per week.  Plaintiffs' testimony and payroll and personnel records demonstrate that they were paid a starting base salary as follows:

| | | |
|---|---|---|
| Randy Best | $106,000 annually | $4,076.92 biweekly |
| Kendall Bonner | $106,000 annually | $4,076.92 biweekly |
| Shane Spradlin | $106,000 annually | $4,076.92 biweekly |
| Gary Favor | $106,000 annually | $4,076.92 biweekly |
| Jason Hicks | $110,000 annually | $$,615.38 biweekly |
| James Helenberger | $100,000 annually | $4,096.17 biweekly |
| John " Mike" Stegall | $110,000 annually | $4,096.17 biweekly |
| Luther Sanders | $ 75,000 annually | $2,884.62 biweekly[166] |

Plaintiffs each received periodic salary increases and beginning on August 1, 2014, Luther Sanders was paid a salary of $100,000 per year or more.[167]  In 2015, due to declining market

---

[166] **LDC APPX 00001** [Ex. 1, Cochran Aff., at ¶4]; **LDC APPX 0165** [Ex. 34, Best's Payroll Records]; **LDC APPX 01140-01223** [Ex. 38, Bonner's Payroll Records]; **LDC APPX 01093-01139** [Ex. 37, Spradlin's Payroll Records]; **LDC APPX 1234-1260** [Ex. 41, Favor's Payroll Records]; **LDC APPX 01261-01279** [Ex. 42, Hicks' Payroll Records]; **LDC APPX 01281-01364** [Ex. 44, Helenberger's Payroll Records]; **LDC APPX 01389-01417** [Ex. 46, Stegall's Payroll Records]; **LDC APPX 01044-01060** [Ex. 32, Sanders' Payroll Records]

[167] **LDC APPX 01044-01060** [Ex. 32, Sanders' Payroll Records]

conditions, Latshaw imposed company-wide pay cuts.  But even with these cuts, Plaintiffs continued to be paid $100,000 or more annually.[168]

**2.      Plaintiffs' Primary Duty Was the Performance of Non-Manual Work  Directly Related to the General Business Operations of Latshaw**

The primary duty of a top drive technician, electrician and mechanic is a non-manual one, especially compared to the drilling crews who perform the manual labor involved in drilling wells.  Plaintiffs functioned as project managers – and their primary duty was planning and overall execution of preventative maintenance for rigs to avoid downtime.[169]  Performing the actual repairs is not the Plaintiffs' most important duty.[170]

The term "primary duty" means the principal, main, major or most important duty that the employee performs.  29 C.F.R. §541.700.  Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.  *Id. see also Chicca v. St. Luke's Episcopal Health Sys.,* 858 F. Supp. 2d 777, 782 (S.D. Tex. 2012) ("In determining an employee's principal duty, courts consider the actual day-to-day job activities of the employee…") (internal quotations omitted). As a general rule, an employee's "primary duty" involves over 50% of the employee's work time.  *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000). Flexibility is appropriate when applying this general rule, however, depending on the importance of the employee's duties, frequency of exercise of discretionary power, freedom from

---

[168] **LDC APPX 01061-01064** [Ex. 33, Sanders' Personnel Records]; and **LDC APPX 00002** [Ex. 1, Cochran Aff. at ¶8].

[169] **LDC APPX 00082-00083** [Ex. 3, Gallander Depo at 94:12-19; 95:3-17]; **LDC APPX 00818** [Ex. 18, Spradlin Depo at 197:6-13; **LDC APPX 00194, 0095** [Ex. 7, Stegall Depo at 216:11-13; 218:11-22; **LDC APPX 00132-00133** [Ex. 4, Helenberger Depo at 212:19-213:9]

[170] **LDC APPX 00081-00082** [Ex. 3, Gallander Depo at 93:23-94:2]

supervision and comparative wages. *Id.* "[O]ne can still be 'managing' if one is in charge, even while physically doing something else." *Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982). The 50% rule seems better directed at situations where management and non-management functions are more clearly severable. *See also* 29 C.F.R. §541.03.

To satisfy the "directly related to the management or general business operations" requirement, the employee must perform work "directly related to assisting with the running or servicing of the business as distinguished, for example, from working on a manufacturing production line or selling a product in a retail establishment" 29 C.F.R. §541.201(A). The ultimate distinction is between those employees whose primary duty is administering the enterprise's business affairs and those employees who primary duty is producing or selling the commodity, whether goods or services, that the enterprise exists to produce and market. *Id.*; *Dalheim*, 918 F.2d at 1230.

Here, because well operations are by their very nature unique and individual, the individualized job duties and responsibilities of each of the Plaintiffs' is magnified. This fact is uncontroverted by Plaintiffs who have testified: every day was different; every hour was different;[171] there was "no typical hitch;"[172] "what was broken and where it was broken was ... ever changing;"[173] "every single day was different."[174] Best agreed that no two problems were the same and every day was a new day.[175] "[T]he whole point of the job is it's never the same

---

[171] **LDC APPX 0983** [Ex. 23, Favor Depo at 162:11-14]; **LDC APPX 00797** [Ex. 17, Hicks Depo at 123:10-14]; **LDC APPX 00116, 000128** [Ex. 4, Helenberger Depo at 66:6-12, 182:5]; **LDC APPX 00816** [Ex. 18, Spradlin Depo at 195:19-23]
[172] **LDC APPX 00813** [Ex.18, Spradlin Depo at 190:22.
[173] **LDC APPX 00116** [Ex. 4, Helenberger Depo at 66:6-12]
[174] **LDC APPX 00128** [Ex. 4, Helenberger Depo at 182:5]
[175] **LDC APPX 00947** [Ex. 22, Best Depo at 41:9-15]

thing day to day."[176]  Two techs could manage the same issue on a rig totally different.[177]  The

techs are "not robots."[178]  They are required to "think outside the box."[179]  Helenberger admits

the job required "creativity."[180]  And, Spradlin testified that he was not hired to turn a wrench.

He was hired for the "neck up."[181]  Indeed, the most important skill a top-drive tech was required

to have was "intelligence."[182]  Thus, the Court must look to the character of Plaintiffs' job as a

whole.  29 C.F.R. §541.700(a).

Plaintiffs were the eyes and ears of Latshaw in the field.  Their work was prioritized to

avoid downtime.  While they certainly engaged in some manual labor, Plaintiffs' daily field

reports demonstrate that in order to carry out their primary duty (i.e., planning and overall

execution of preventative maintenance on rigs to avoid downtime), the Plaintiffs performed

numerous non-manual activities directly related to the general business operations of Latshaw

and its customers, including the following: inspecting and assessing rigs as they currently stand

and as they will need to be serviced in the future, troubleshooting problems, procuring necessary

parts, engaging third-party vendors and overseeing their work, training Latshaw drilling crew

members on proper maintenance procedures, testing equipment, reporting back to the corporate

office as to the status of the rigs functioning by completing daily reports, as well as planning

work for when they return on their next rotation, leaving hand-over notes for the next technician

who steps into their place, completing inventories, expense and other reports, collaborating on

---

[176] **LDC APPX 00111** [Ex. 3, Gallander Depo at 241:1-12]
[177] **LDC APPX 00918-00919** [Ex. 20, Hickey Depo at 101:19-102:6].
[178] [*See id.*]
[179] **LDC APPX 00918-00921** [Ex. 20, Hickey Depo at 101:19-102:6,17-103:3,13-104:2]
[180] **LDC APPX 00120-00121** [Ex. 4, Helenberger Depo at 126:18-127:9]
[181] **LDC APPX 00815-00817** [Ex. 18, Spradlin Depo at 194:24-196:6]
[182] **LDC APPX 00084-00085** [Ex. 3, Gallander Depo at 96:24-97:3]

checklists, recommending new hires and giving feedback regarding drilling crew members that assisted them.[183]   These activities consumed Plaintiffs' days.

Indeed, Plaintiffs testified that the paperwork alone (daily reports, rig inspection checklists, inventories and other reports) was extensive.[184]   Bonner testified that he did more paperwork at Latshaw than other jobs he held.[185] Spradlin completed 1 to 5 hours of paperwork daily and Stegall spent 3 to 4 hours a day doing paperwork.[186]   Plaintiffs also spent considerable time on the phone troubleshooting rig issues.[187]

Plaintiffs were the highest ranking maintenance employees in the field.[188]   They are "teachers," "assessors," "instructors," and sometimes "firefighters."[189]   Inspecting rigs, completing checklists and daily activity reports, regularly overseeing the work of contractors and reviewing their invoices, determining which tools and equipment are necessary for a given project and purchasing them, training crew members are all examples of  non-manual work  that supports the administrative exemption.

### 3.     Plaintiffs' Primary Duty Includes the Exercise of Discretion and Independent Judgment With Respect to Matters of Significance.

Plaintiffs had broad discretion in how they accomplished these tasks and had the authority to make decisions with respect to matters of significance.  Relevant factors to consider include, among others, "whether the employee has the authority to formulate, affect, interpret or

---

[183] *See supra* Statement of Undisputed Fact No. 18.
[184] **LDC APPX 00118** [Ex. 4, Helenberger Depo at 93:1-6
[185] **LDC APPX 00792** [Ex. 16, Bonner Depo at 204:2-10
[186] **LDC APPX 00814** [Ex. 18, Spradlin Depo. 191:14-16; and Stegall Depo. 266:4-9.
[187] **LDC APPX 00951, 00956**  [Ex. 22, Best Depo. at 84:16-25, 135:16-20]; **LDC APPX 00984-00985** [Ex.23, Favor Depo at 184:7-185:2]; **LDC APPX 00199** [Ex. 7, Stegall Depo 267:8-16]
[188] **LDC APPX 00002** [Ex. 1, Cochran Aff., at ¶7]; **LDC APPX 00779-00780** [Ex. 16, Bonner Depo at 43:22-44:7]
[189] **LDC APPX 00024-00025** [Ex. 2, Reid Depo 1 at 252:13-253:8]

implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affect the business to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; . . . whether the employee provides consultation or expert advice to management; …[and] whether the employee investigates and resolves matters of significance on behalf of management…." 29 C.F.R. §541.202(b).

Plaintiffs did all of these things. They had authority to implement operating practices as they planned preventative maintenance on rigs. Their on-site presence may be characterized as requiring their constant vigilance to determine whether the rig was operable and stepping in to resolve issues of significance to avoid downtime. They collaborated on checklists.[190] They trained drilling crews on proper maintenance.[191] They had decision making authority as to how

---

[190] **LDC APPX 00078-00079** [Ex. 3, Gallander Depo 71:3-6, 24-72:5]

[191] **LDC APPX 00490** [Ex. 11, Favor's Daily Reports at Latshaw 006655 ("talked with rig 19 on phone. Rig started having torque problems after hours of torqueing up drill string and letting it spin off. Advised them to let chopper cool off in vfd before continuing operations"); at Latshaw 006693 (rig 42 talked with pusher for future maintenance); at Latshaw 006709 ("when I arrived I found the TD on the ground and I had asked them not to this because it was off the track. Not happy, I got them to put it up on pipe racks to start work…")]; **LDC APPX 00201** [Ex. 8, Best's Daily Reports at Latshaw 009292 (fielding questions from rig 5 on proper procedure), at Latshaw 001398 (trained new driller on how to run canrig top drive), at Latshaw 001777-001779 (trained hands how to change mud valve), at Latshaw 001797-001799 (talked rig 5 through alarm issue)]; **LDC APPX 00407** [Ex. 10, Bonner's Daily Reports at Latshaw 004999 (advised needed to start greasing track weekly to keep guide runners from wearing prematurely), at Latshaw 5005 (spoke with driller about making sure all the service loops are hooked up before powering anything up), at Latshaw 005007 (went over procedures for stacking out the top drive), at Latshaw 005016 (Rig 18 training drillers), at Latshaw 005023, at Latshaw 005025 (direct rig manager on rig 17 to make list of items to be repaired before rig down), at Latshaw 005053 (told Garza that under no circumstance was the a/c' s to be turned off. They turned them back on and the temperature went back down, all good), at Latshaw 005054 (instruct rig 18 about procedures on rig move)]; **LDC APPX 00554** [Ex. 12, Hicks' Daily Reports at P000016 (make sure day driller knew how to make connection and break out), P000040, P0000041 (showed Danny CU2 card, corn cart, DTI card, Encoder circuit, VDC, 19 pin and 42 pin cabling in VFD, etc… )]; **LDC APPX 00337** [Ex. 9, Sanders' Daily Reports at Latshaw 000418 (trained new driller how to rig down top drive), at Latshaw 000419 (directed pusher to power wash and tighten hoses), at Latshaw 000475 (directed pusher regarding procedure for changing oil), at Latshaw 000514 (walked pusher through down pump & told pusher how to reconnect TD), at Latshaw

and when maintenance would be accomplished[192] and whether to engage a contractor to perform

necessary work.[193]   These operations were more than important - they were "pivotal" - to

---

000524 (directed pusher's work on rig 14), at Latshaw 000620 (pusher is canrig pusher so will need help on rig up; showed and gave him all the info I could)]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports at Latshaw 009494, at Latshaw 10944]

[192] *See e.g.,* **LDC APPX 00201** [Ex. 8, Best's Daily Reports at Latshaw 001068 (planning for rig move), at Latshaw 001108 (planning for rebuild of motors), at Latshaw 001477 (recommending service), at Latshaw 002069-002071 (planning for drive spline repair and next steps)]; **LDC APPX 00337** [Ex. 9, Sanders Daily Reports at Latshaw 000047 (plan for issues to be fixed on rig move), at Latshaw 000528 (met with other techs and Jean "spoke on expectations and ways we could help save costs and plans for rigs), at Latshaw 000539 (planning work), at Latshaw 000535 (discussed work and took pictures of repair), at Latshaw 000588 (discuss plans to move rig), at Latshaw 000589; at Latshaw 000593-94, at Latshaw 000639 (plan for rig move), at Latshaw 000640 (plan for rig move), at Latshaaw 000777-000785 (recommendations on repairs to rig 22)]; **LDC APPX 00554** [Ex. 12, Hicks' Daily Reports at P000016 (spoke with rig manager to plan for rig move), at P000024 (list of issues to address on rig 25), at P000027, at P000064, at P000076, at P000097, at P0001417, at P001946]; **LDC APPX 00490** [Ex. 11, Favor's Daily Reports at  Latshaw 0006679 (went over maintenance schedules and procedures on TDS 11; "rig 22:  set up yearly with brads electric"), at Latshaw 0006713 (go to Brad' s shop and talk with Chris about yearly, took several pics), at Latshaw 0006775 ("The long pwr loops is showing signs of damage due to the conductors falling down in the hose on the derrick end. This will need to be replaced soon… ."), at Latshaw  0006794, at Latshaw 0006841 ("went to rig 15, organized getting TD moved to new location…")]; **LDC APPX 00407** [Ex. 10, Bonner's Daily Reports at Latshaw 0004970 ("Went to Rig 5, together with Randy and Darrell W made a game plan…), at Latshaw 0004973, at Latshaw 0004976 (scheduled Fit Test), at Latshaw 0004978 (coordinate with Rig Manager on rig move), at Latshaw 0004981, at Latshaw 0004985, at Latshaw 0004990 (coordinate with rig manager), at Latshaw 0004998, at Latshaw 0005014, at Latshaw 0005015 (plan for annual inspection of rig 5), at Latshaw 0005028-29, at Latshaw 0005064, at Latshaw 0005068, at Latshaw 0009348-49 (identify that BUW Assy needs to be completely changed out & quote $69,401.29 repair)]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports at Latshaw 0009539-40, at Latshaw 0009544 (Need to look at link tilt extend and retract staying on when switch is turned off), at Latshaw 0009614-16, at Latshaw 0010351-52, at Latshaw 0010784 (worked on getting people and things ready for service loop change), at Latshaw 0010944] ; **LDC APPX 00710** [Ex. 14, Helenberger's Daily Reports at Latshaw 0005461 (coordinate with Company man to plan work)]

[193] **LDC APPX 00490** [Ex. 11, Favor's Daily Reports at Latshaw 0006603-07 (rebuild), 0006675, 0006683, 0006709, 0006713, 0006733, 0006767, 0006773, 0006756 (sent Brad's to rig 34, having press Alarms), 0006775, 0006841, 0006894 (went to Owen's machine shop to pick up trac carriage for rig 21, MPI was not complete but painted so left if for redo), 0006944, 0006947]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports at  Latshaw 0009487-89, 0009518, 0009548, 0009589, 0009635, 0009652 (Rig 35… Omron and Brad's electric tech there… Omron tech not very knowledgeable about things… .At 2000, Omron tech time out.  We were in worse shape then when we started… . Brad' s tech was more knowledgeable than Omron tec…), 0009738, 0010003, 0010059, 0010086, 0010087, 0010135, 0010195, 0010284-88, 0010466, 0010468, 0010546, 0010749, 0010767, 0010824, 0011013, 0011014]; **LDC APPX 00337** [Ex. 9, Sanders' Daily Reports at  Latshaw 0000410, 0000478, 0000502, 0000503, 0000511, 0000514, 0000530(directed Owens on Rig 34 work to be completed), 0000612, 0000642,

Latshaw and its customers,[194] which is why Latshaw's downtime is far below the industry average.[195]

It is undisputed that Plaintiffs were vested with the discretion to make necessary and impactful decisions.  As Jean Gallander testified:  "They need to be able to do their job without me telling them that they need to go from A to B to C."[196]  Best plainly stated that he is not micro manageable and that it's his job to make decisions.[197]  Plaintiffs' daily reports reflect the discretion they implemented in doing their job. Plaintiffs also had credit cards with a $15,000 limit and in a rig down situation could exceed their purchasing limit without authority.[198] Whether Plaintiffs had final decision making authority as to any particular matter, though, is irrelevant to the determination of whether they exercised discretion and independent judgment. *Lott.,* 203 F.3d at 331 ("Final decision make authority is unnecessary").

### 4.    Conclusion

Plaintiffs were all high-salaried technicians who prioritized and managed  drilling rig maintenance to avoid downtime.  This required constant vigilance, exercising independent discretion and judgment and making decisions of "pivotal importance" on  a wide variety of

---

0000643-45, , , 0000649, 001101]; **LDC APPX 00201** [Ex. 8, Best's Daily Report at  Latshaw 0001194, 0001248, 0001296, 00011431-32, 0011436-37, 001456-57, 001581-82, 001624-36, 001680-82, 001727, 009297]; **LDC APPX 00407** [Ex. 10, Bonner's Daily Report at  Latshaw 004974, 004976, 004979, 004980, 005003, 005004, 004023, 005027, 005028, 005029, 005044, 005045, 005046, 005047, 005055, 005062, 005065, 005067, 005073, 005074]; **LDC APPX 00554** [Ex. 12, Hicks' Daily Reports at P000074] ; **LDC APPX 00710** [Ex. 14, Helenberger's Daily Reports at Latshaw 0005396, 0005461, 0005581, 0005612, 0005638, 0005858, 0005943, 0005944, 0006914, 0005203, 0005207, 0005210]

[194] **LDC APPX 00023** [Ex. 2, Reid Depo 1 at 205:12-17]; **LDC APPX 00795** [Ex. 17, Deposition of Jason Hicks ("Hicks Depo") at 163:2-19 (describing work as "pivotal - more than important"…"If you're not drilling -- you're not making money")]
[195] **LDC APPX 00024-00025** [Ex. 2, Reid Depo 1at 252:13-253:8]
[196] **LDC APPX 00094** [Ex. 3, Gallander Depo at 131:22-25.
[197] **LDC APPX 00948-00949, 00950**[Ex. 22, Best Depo at 56:21-57:4; 71:23-25]
[198] **LDC APPX 00994** [Ex. 24, Stockton Depo at 47:7-23]

tasks.  Based on these facts, Plaintiffs were exempt administrative employees as a matter of law, and the Court should grant Latshaw's motion for summary judgment.

**B.    Even if Plaintiffs Were Not Otherwise Exempt Administrative Employees, Plaintiffs Were Exempt "Highly Compensated Employees"**

An employee who earns total annual compensation of at least $100,000 performing office or non-manual work is deemed exempt from the FLSA's minimum wage and overtime requirements if he "customarily and regularly"[199] performs at least one of the exempt duties or responsibilities of an exempt executive, administrative, or professional employee.  29 C.F.R. 541.601(a) and (c).[200]  According to the Department of Labor, this is because a high level of compensation is a strong indicator of an employee's exempt status, thus eliminating the need for a detailed analysis of the employee's job duties.  29 C.F.R. §541.601(c).

**1.    Plaintiffs Received Total Annual Compensation Over $100,000**

Plaintiffs Best, Bonner, Favor, and Spradlin, were paid a beginning base salary of $106,000 per year.  Plaintiffs Hicks and Stegall were paid beginning base salaries of $110,000 per year and Plaintiff Helenberger was paid a base salary of $100,000.   Beginning on August 1, 2014, Plaintiff Sanders was also paid a base salary of $100,000 per year. This was paid biweekly and meets this exemptions' salary requirement.  Plaintiffs' salary rates remained at the same level or higher through their respective dates of separation.[201]

**2.    Plaintiffs Customarily and Regularly Performed One Exempt Duty of an Administrative or Executive Employee**

---

[199] "Customarily and regularly" means a frequency that must be greater than occasional, but which may be less than constant."  29 C.F.R. §541.701.

[200] The regulations state that "[a]n employee may qualify as a highly compensated executive employee, for example, if the employee customarily and regularly directs the work of two or more other employees, even though the employee does not meet all of the other requirements for the executive exemption under §541.601(c).

[201] **LDC APPX 00002** [Ex. 1, Cochran Aff. at ¶5, 8].

At all relevant times, Plaintiffs performed one or more of the exempt duties or responsibilities of an exempt administrative employee.  The focus here is merely on whether they performed the duties, not whether they exercised independent judgment and discretion in doing so.  *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459, 478 (S.D.N.Y. 2008).

As discussed thoroughly herein, there is simply no dispute that Plaintiffs performed at least one exempt duty or responsibility of an administrative or executive employee.  Indeed, they performed multiple administrative and executive responsibilities on a regular basis.

> All Plaintiffs' prepared daily reports, which were copied to their superintendents and sometimes the maintenance manager and operations manager. These reports contained information regarding the current status and function of rigs, maintenance projects and providing instructions and/or information regarding remaining tasks;[202]

> Plaintiffs regularly prepared other reports, such as hand over notes, inventories and expense reports;[203]

---

[202] *See* **Fn. 29** *surpa.*

[203] **LDC APPX 00490** [Ex. 11, Favor's Daily Reports at Latshaw 0006703; 0006721, 0006747, 0006794, 0006814, 0006817, 0006835, 0006865, 0006661 (tool inventory), 0006664 (tool inventory), 0006921 (rig inventories)]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports at Latshaw 0009614-16, 0009669, 0010041, 0010429, 0010478, 0010500, 0010696]; **LDC APPX 00407** [Ex. 10, Bonner's Daily Reports at Latshaw 0004961, 0004968 (monthly safety paperwork; met with Randy); 0004972 (truck inventory); 0005009 (inventory), 0004981 (sent in reports), 0004984, 0004883 (spoke with Randy re issues), 0004994 (training paperwork, expenses), 0004995, 0004996, 0005009-11 (inventory of Midland Yard Conex, Major Parts), 0005018-20 (rig 5 annual report), 0005022 (safety paperwork expenses), 0005024 (training class), 0005042 (training class); 0005043 (CPR Class all day), 0005056 (expense report)]; **LDC APPX 00554** [Ex. 12, Hick's Daily Reports at P0000050 (Conex inventory), at P0000051(parts inventory), at P000098 (Conex inventory); at P000102 (inventories)]; **LDC APPX 00201** [Ex. 8, Best's Daily Field Reports at Latshaw 0001156-57 (handover notes), 0001188 (class), 0001190 (class), 0001192 (class), 0001222 (tool inventory), 0001229 (training), 0001271 (truck inventory); 0001561 (handover notes) 0001591-92 (handover notes), 0001790-1792 (handover notes), 0001845-46 (handover notes)]; **LDC APPX 00337** [Ex. 9, Sanders' Daily Field Reports at Latshaw 000044 (class), 000454 (class and expenses), 000455 (class), 000478 (turnover notes), 000511 (expenses), 000514 (expenses), 534 (expenses), 000589 (read morning reports), 000607 (expenses), 000618 (expenses), 000639 (expenses), 000640 (expenses)]; **LDC APPX 00710** [Ex. 14, Helenberger's Daily Reports at Latshaw 0005636 (inventory), 0005943 (expense report)]

All Plaintiffs' determined which tools and equipment were necessary for a given project and procured parts;[204]

Plaintiffs performed rig inspection and completed checklists;[205]

---

[204] **LDC APPX 00490** [Ex. 11, Favor's Daily Reports at Latshaw  0006621, 0006639, 0006653, 0006679, 0006681, 0006699, 0006703, 0006715, 0006727, 0006754, 0006794, 0006817, 0006832, 0006872, 0006894, 0006944, 0007008]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports at Latshaw 0009286-87, 0009314-15, 0009482-83, 0009518, 0009549, 0009559, 0009612, 0009641, 0009647, 0009743, 0009936, 0009951, 0009959, 0009628, 00010241, 0010249, 0010396, 0010429, 0010466, 0010537, 0010543, 0010688, 0010763, 0010801, 0011063-11065]; **LDC APPX 00201** [Ex. 8, Best's Daily Reports at Latshaw 0001042; 0001044; 0001050, 0001060, 0001062, 0001068, 0001070, 0001076, 0001078, 0001082, 0001084, 0001087, 0001091, 0001098, 0001100, 0001106, 0001108, 0001119, 0001121, 0001163, 0001165, 0001176, 0001178, 0001180, 0001184, 0001186, 0001200, 0001216, 0001222, 0001248, 0001276-77, 0001286, 0001311-12, 0001316, 0001341, 0001374-75, 0001403-04, 0001451-52, 0001466-67, 0001471-73, 0001479-81, 0001486-88, 0001566-67, 001581-82, 0001591-92, 0001601-02, 0001627-1628, 0001634-36 ("60 phone calls looking for parts"), 0001680-82, 0001845-46, 0009299-301]; **LDC APPX 00407** [Ex. 10, Bonner's Daily Reports at Latshaw 0004968, 0004969, 0004970, 0004973, 0004980, 0004985, 0004996, 0004997, 0004998, 0005003, 0005006, 0005009, 0005013, 0005025, 0005027, 0005030, 0005040, 0005047, 0005048, 0005059, 0005071, 0005072, 0005073, 0005076, 0009325-27 (following up w/Canrig re missing parts list), 0009342; 0009343-47; 0009348]; **LDC APPX 00554** [Ex. 12, Hicks' Daily Reports at P0000029, P0000047, P000077, P000087, P000102, P001417, P001477]; **LDC APPX 00337** [Ex. 9, Sanders' Daily Reports at Latshaw 0000419, 0000441, 0000446, 0000447, 0000475, 0000507,0000511, 0000513, 0000514, 0000517, 0000524, 0000525, 0000589, 0000598, 0000599 (working on parts list), 0000612, 0000619, 0000638, 0000648, 0000649]; **LDC APPX 00710** [Ex. 14, Helenberger's Daily Reports at Latshaw 0005678, 0005943, 0005207]; **LDC APPX 00731** [Ex. 15, Stegall's Daily Reports]

[205] **LDC APPX 00490** [Ex. 11, Favor's Daily Reports at Latshaw 0006641, 0006643, 0006647, 0006649, 0006655, 0006687, 0006701 (checked Top drive operation on rigs 22,7,19 and 42), 0006703, 0006715 (went to right to check out service loop delivered from OK), 0006721 (rig 7: rig stated they had sparks coming out of xmfr, this problem actually cleared on the capacitor while Tsing. ABB 100a brkr is bad); 0006727 (surveyed TD and found several problems), 0006733, 0006736, 0006762, 0006765, 0006767, 0006773, 0006841, 0006847, 0006894 (headed to rig 22 to inspect T.D. … took pictures), 0007011 (survey TD and assoc. equipment); 0006619 (worked with shane troubleshooting no Hydraulic press", 6645 "troubleshoot pin 18 cable)]; **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports at Latshaw 0009484, 0009562, 0009569, 0009630, 0009652, 0009676, 0009877, 0009941 (rig checks), 0009959, 1000043 (function tests after rig up), 0010241, 0010317, 0010363, 0010429, 0010478, 0010505, 0010682, 0010705, 0010698, 0010784, 0010970 (TD inspection, make parts lists)]; **LDC APPX 00407** [Ex. 10, Bonner's Daily Reports at Latshaw 0004976, 0004982, 0004985, 0004988, 0004992, 0004997, 0004998, 0005004, 0005006, 0005007, 0005997, 0005008, 0005012, 0005014, 0005015, 0005016, 0005017 (annual inspection), 0005025, 0005026, 0005028, 0005030 (inspect elevators before and after washed, took pictures), 0005044, 0005045, 0005072, 0005076, 0005071]; **LDC APPX 00554** [Ex. 12, Hicks' Daily Reports at P000015, P000019, P000027, P00031, P0000039, P0000041, P0000049, P0000050, P000056, P000057, P000062, P000070, P000078, P000086, P000087, P000097, P0000100 (TS R25 issues with Danny over phone); P000103, P000104, , P000105, P000108, P001621, P001423, P001414, P001943, P001453]; **LDC APPX 00201** [Ex. 8, Best's Daily Reports at Latshaw 0001044 (confer w/pusher and driller re issues), 0001046, 0001060 (testing), 0001091, 0001099,

All Plaintiffs regularly supervised contractors and exercised decision making authority on which contractors to hire;[206] and

All Plaintiffs trained drilling crews on preventative maintenance.[207]

Plaintiffs even made recommendations and offered reviews of other Latshaw employees.[208]

The performance of any *one* of these duties qualifies Plaintiffs as exempt highly compensated employees.

*See e.g., Williamson v. BOPCO L.P.*, 2017 WL 5071336, No. PE:16-CV-79-RAJ-DF (W.D. Tex. Sept. 27, 2017) (granting defendant's motion for summary judgment finding plaintiff was exempt as a highly compensated employee because among other things he trained pumpers, provided recommendations and options about job candidates, supervised and coordinated contractors and collaborated with engineers to repair wells and maximize production); *Pruneda*

---

0001115, 0001117, 0001119, 0001174 (visual inspections and talk to driller), 0001184, 0001281-1282 (inspect and talk to driller), 0001286, 0001296-1297, 0001311-12, 0011374-75, 001384-85 (help on phone on rig 14 issues), 001451-52, 001456-57, 001852-54]; and **LDC APPX 00337** [Ex. 9, Sanders' Daily Reports at Latshaw 000410 (diagnose problems at rig 34), 000413 (inspect and talk to driller), 000441, 000446, 000447, 000459, 000461, 000495 (inspect and discuss issues with hands), 000502 (troubleshooting), 00503, 000505, 000507 (waited for problem to reproduce), 000511 (discussed maintenance to be done by crew)k, 000512, 000513 (inspection), 000517 (diagnose issues), 000525 (inspected and conferred with drilling crews), 000528 (discuss rig issues with pusher to plan work), 000532 (check reports on rigs), 000534, 000589 (pictures of inspection & troubleshooting with pusher); 000590 & 000593-94 (inspect, take pictures and prepare report w/recommendations), 000619, 000638, 000641, 000642 (walked rig 10 through encoder bypass), 000649]

[206] *See* FN 194 *surpa*
[207] *See* FN 192 *supra*
[208] **LDC APPX 00610** [Ex. 13, Spradlin's Daily Reports at Latshaw 000 520-21, 0009866, 0010018-19 (big disconnect in report and what I read on rig reports with all that's going on), 0010351-52 (remind me to tell about 'one of our own – Shawn we don't need that shit in our midst!"), 0010524-25 (offering recommendation on resume of potential hire),00 10612, 0010857-58, 0010914]; **LDC APPX 00554** [Ex. 12, Hicks' Daily Reports at P000020 (atta boy to rig crew); 9408 (Danny Janes Review), P0000035 (recommendations on phasing out Hetronic systems and install Podium System)]; **LDC APPX 00201** [Ex. 8, Best's Daily Reports at Latshaw 001719 (recommend hiring JD as trainee to reduce 3rd party needs)]

*v. Xtreme Drilling & Coil Services*, Inc., 2017 WL 3023214, No. 5.16-CV-091-DAE (W.D. TX June 20, 2017) (finding that service supervisors who managed crew members and prepared daily activity reports were exempt as highly compensated employees irrespective of the fact that they also performed physical labor on well sites): *Bellone v. Kraft Power Corp.,* 2016 WL 2992126, No. 15-CV-3168 (E.D.N.Y. May 23, 2016) (granting defendant's motion for summary judgment because plaintiff drafted emails to employees and supervisors regarding the status of projects among other duties); *Zannikos v. Oil Inspections (USA), Inc.,* 605 Fed. Appx. 349, 353-54, 360 (5th Cir. 2015) (holding that an oilfield services employee who offered "inspection and operational support services" met the second element of the administrative exemption and thus qualified for the highly compensated employee exemption).[209]

### 3. Conclusion

Plaintiffs performed one or more administrative duties and received a salary of at least $100,000 in exchange. Summary Judgment is appropriate against Plaintiffs Best, Bonner, Favor, Helenberger, Hicks, Spradlin and Stegall. Even if Sanders was not exempt as a bona fide administrative employee, the Court should nonetheless grant partial summary judgment against Sanders as to the time period beginning August 1, 2014 and continuing until the end of his employment.

### C.   Plaintiffs' Claim under the NMMWA Fails as a Matter of Law Because Plaintiffs Did not Make Demand on Latshaw for Unpaid Overtime

---

[209] Plaintiffs plainly performed administrative work in conjunction with their exempt executive duties. *See supra.* Accordingly, even if the Court finds Plaintiffs are not exempt under the executive or highly compensated employee exemptions, they are exempt based on the combination of their exempt duties. *See* 29 C.F.R. 541.708 (recognizing that employees may perform more than one category of exempt work). The combination exemption serves as a mechanism for cobbling together different exempt duties for purposes of meeting the primary duty test.

The NMMWA provides that when an employer discharges an employee, the unpaid wages of such employee, if a fixed and definite amount, shall ***"upon demand"*** become due immediately.  N.M.S.A. §50-4-4(A) (1978) (***emphasis added***).  Such wages are to be paid within five days of discharge.  If an employer fails to pay the employee wages within the five-day period, the wages shall continue from the date of discharge until paid provided that

> the employee shall not be entitled to recover any wages or compensation for any period subsequent to the date of discharge ***unless he pleads in his complaint and establishes that he made demand within a reasonable time upon his employer*** at the place designated for payment and payment was refused; provided further that the employee shall not be entitled to recover any wages or compensation for any period subsequent to the sixtieth day after the date of discharge.

N.M.S.A. §50-4-4(C) (1978) (***emphasis added***).

Under the plain language of the statute, Plaintiffs must have first been *discharged* and second made a demand on Latshaw for any unpaid wages in order to proceed under the NMMWA.  Here, it is undisputed that Plaintiffs did not make demand upon Latshaw for payment of unpaid overtime.[210]  Moreover, the Amended Complaint does not aver that a demand was made.  Additionally, Plaintiffs Sanders, Spradlin, Hicks and Stegall quit their job at Latshaw and were not discharged.[211]  Thus, Plaintiffs have not satisfied the statutory conditions precedent to asserting a claim under the NMMWA and cannot proceed thereunder.[212]

**D.**      **Best's Unlawful Retaliation Claim Fails, as a Matter of Law Because There is No Causal Connection Between The Filing of This Lawsuit and Latshaw's Decision Not to Engage Best as Contractor to Do Work for Latshaw**

---

[210] **LDC APPX 00002** [Ex. 1, Cochran Aff. at ¶11]

[211] **LDC APPX 01061-01064** [Ex. 33, Sanders Personnel Records]; **LDC APPX 01088-01092** [Ex. 36, Spradlin's Personnel Records]; **LDC APPX 01280** [Ex. 43, Hicks' Personnel Records]; and **LDC APPX 01418-01421** [Ex. 47, Stegall's Personnel Records]

[212] The NMMWA does not apply to an individual employed in a bona fide executive, administrative or professional capacity and forepersons, superintendents and supervisors.  Plaintiffs' positions are akin to that of a foreman and are additionally executive and/or administrative employees as discussed *supra*.

Plaintiff Best has brought an individual claim against Latshaw claiming that he was retaliated against in violation of 29 U.S.C. § 215, which prohibits discrimination against any employee for filing a complaint under the FLSA. In order to succeed on such a retaliation claim, Best must prove the same elements that would be required under a Title VII claim. *Strickland v. MICA Info. Sys.,* 800 F.Supp. 1320, 1323 (M.D.N.C.1992) (citing *Brock v. Richardson,* 812 F.2d 121, 123 (3d Cir. 1987)). A Title VII claim requires intentional discrimination, and under the familiar *McDonnel Douglas/Burdine* framework, the Court employs a three-part test designed to determine the motivation of the defendant in taking the challenged action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 255 at n. 10, 101 S. Ct. 1089, 1095 at n. 10, 67 L.Ed.2d 207 (1981).

First, the plaintiff is required to establish a prima facie case wherein he must establish the elements of the discrimination claim. If the plaintiff meets these requirements, a presumption of discrimination arises. *Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955 (5th Cir. 1993). Second, the defendant may then rebut this presumption by articulating a legitimate, nondiscriminatory reason for the alleged discriminatory action. *Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471 (5th Cir. 1992). An employer meets this burden by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the employer. *Guthrie v. Tifco Indus.,* 941 F.2d 374, 376 (5th Cir. 1991). The defendant need not *persuade* the trier of fact that there was no intentional discrimination; he need only produce evidence on that point. *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S. Ct. 2742, 2747, 125 L.Ed.2d 407, 416 (1993). Once defendant rebuts the presumption of retaliation by articulating a legitimate, non-retaliatory reason for its decision, the plaintiff must produce evidence that defendant's proffered reason for the discharge

40

is merely a pretext, and that the real reason for his termination is an illegal retaliatory animus. *Id.* (citing *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 255 at n. 10, 101 S. Ct. 1089, 67 L.Ed.2d 207 (1981).

To establish a *prima facie* case of retaliation for the exercise of a federally protected right, Best must show that (1) he engaged in a protected activity; (2) he was subjected to an adverse employment action following his protected activity; and (3) there was a causal connection between the protected activity and the adverse action. *Southard v. Texas Bd. of Criminal Justice,* 114 F.3d 539, 554 (5th Cir. 1997) (applying the standard in a Title VII case).

Here, there is no evidence that Latshaw took "an adverse employment action" against Best.  At the time, Latshaw determined not to permit Best to work on Latshaw locations, Best was not a Latshaw employee.[213]  Certainly, Latshaw had no obligation to use a particular contractor on its rigs, much less a particular employee of a third-party contractor.  In fact, Latshaw had no obligation to engage a third-party contractor at all.  Essentially, Best asks this Court to find that because he sued Latshaw post separation, Latshaw ***mus**t contract or employ Best at Best's whim.  This is nonsensical and would deprive employers of their freedom to contract and operate their businesses.

Second, the ***only*** causal link between Best's protected activity (filing this lawsuit for overtime wages) and the alleged adverse employment action (Latshaw's decision not to engage Best as a third-party) is the immediate temporal proximity of Travis Hickey's May 6, 2016 *internal* email to Latshaw managers. Temporal proximity alone, however, is insufficient to raise a fact question. *See Roberson v. Allel Info. Servs.,* 373 F.3d 656 (5th Cir. 2004).  There is no

---

[213] It is quite easy to assert that the FLSA does not even apply to the alleged retaliation as Best was not an employee of Latshaw at the time.   The fundamental requirement of FLSA protection - an employee/employer relationship - did not exist.

evidence that Hickey, who alone made the decision to stop allowing Best on Latshaw locations, even knew this lawsuit had been filed at the time of his May 6, 2016 email. *See Wheatfall v. Potter*, 2010 WL 2854284, No. H-07-1937, *6 (S.D. Tex. July 19, 2010) (finding that decision maker's access to information did not impute knowledge to him); and *Leahy v. Anderson Crenshaw & Assoc., L.L.C.* 2010 WL 1459197, No. 3:08-CV-1732-L, *6 (N.D. Tex. April 9, 2010) (employee failed to show causal connection between protected activity and retaliation when plaintiff could not demonstrate that person who retaliated knew of protected activity); *James v. Medical Control, Inc.*, 29 F. Supp. 2d 749, 753 (N.D. Tex. 1998) (employee did not establish causation element of retaliatory discharge under FLSA as employee presented no evidence that the personnel who decided to discharge the employee was aware of the protected activity).

Best's alleged causal link is further belied by the fact that other putative class members (such as Bonner and Vernon Pierce) continued to do work for Latshaw after Best was banned from Latshaw locations.  Indeed, Bonner remained an employee of Latshaw until January 10, 2017 - nearly 10 months after the lawsuit was filed.  This begs the questions, if Latshaw was retaliating against Best for filing this lawsuit, why didn't Latshaw similarly retaliate against Bonner?

Even assuming that Best did successfully establish his prima facie case, the undisputed evidence shows that Latshaw had legitimate non-retaliatory reasons for banning Best.  Hickey banned Best from Latshaw locations only after several Rig Managers at different rigs

complained to Hickey that Best was exhibiting a bad attitude and was "bad mouthing" Latshaw

which was causing problems with the drilling crews.[214] Hickey explained his decision as follows:

> … so Randy is like any other third party, even though Randy
> worked for us in the past.
>
> I mean really, that's why Randy was laid off and immediately
> allowed back on our rigs to do this work because those were his
> babies.  I mean, that equipment, the rig 17, the rig 5, the rig 20's,
> Randy helped make those top drive systems what they are today.
> So why would I not want that guy on the rig for those for whatever
> issues or rebuilds or projects that were going on?
>
> Yeah, I would not want to send Randy -- or ban him from the rigs,
> but when, you know Latshaw employees are calling me saying,
> hey, I don't want him back on my rig, he's been badmouthing the
> company, I've got a lot of new hands out here that are new to
> Latshaw and they are listening to this guy badmouth the company,
> I don't want him on our location anymore.
>
> So, I have to make the call.  Just like any other third party.  I would
> do the same thing to any other third party.[215]

Disloyal conduct is a legitimate non-discriminatory reason for an adverse employment

action.  *James*, 29 F. Supp. 2d at 753-754; *Unit v. Aerospace Corp.* 765 F.2d 1440, 1446 (9th

Cir. 1985) (employee is not protected when he willfully interferes with the attainment of the

employer's goals); and *NGrime v. Pappillio Manor, Inc.*, 2009 WL 382757, No. 8:08CV23, *5

(D. Neb. Feb. 12, 2009) (employer who terminated employee for bad-mouthing showed

legitimate non-discriminatory reason for termination).

Importantly, there is no evidence that Latshaw communicated its decision to ban Best

from Latshaw locations to any third party.  Best learned that he was no longer permitted at

Latshaw rig locations from Kendall Bonner.[216]  No one at Owens Electric said anything to

---

[214] **LDC APPX 00910-00915** [Ex. 20, Hickey Depo at 62:25-63:12; 63:25-66:5; 67:18-25]
[215] **LDC APPX 00912-00913** [Ex. 20, Hickey Depo at 64:11-65:7]
[216] **LDC APPX 00958** [Ex. 22, Best Depo at 152:19-21]

him.[217]   Nor did any other drilling company communicate to Best that he could not do work for Latshaw.[218] Best admits that Hickey's May 6, 2016 email did not prevent him from working for third-party contractors, only that it prevented him from working for Latshaw.[219]

Under these facts, the court cannot find that Latshaw acted with retaliatory intent and should grant Latshaw summary judgment as a matter of law.

---

[217] **LDC APPX 00958** [Ex. 22, Best Depo at 152:22-23]
[218] **LDC APPX 00958** [Ex. 22, Best Depo at 152:25-153:2]
[219] **LDC APPX 00964** [Ex. 22, Best Depo at 169:5-20]

Respectfully submitted,


*s/Madalene A.B. Witterholt, Pro Hac Vice*
Madalene A. B. Witterholt, OBA # 10528
CROWE & DUNLEVY, P.C.
321 S. Boston Ave., Suite 500
Tulsa, Oklahoma 74103
Telephone: 918-592-9800
Facsimile:  918-599-6325
Email: m.witterholt@crowedunlevy.com

-and-

Kevin M. Duddlesten, TX Bar #00793644
McGUIRE WOODS, LLP
2000 McKinney Avenue, Suite #1400
Dallas, Texas 75201
Tel: 214-932-6419
Facsimile: 214-932-6499
Email: kduddlesten@mcguirewoods.com
***ATTORNEYS FOR DEFENDANT,***
***LATSHAW DRILLING COMPANY, LLC***

## CERTIFICATE OF SERVICE

I hereby certify that on this **24th** day of **August 2018**, I electronically transmitted the above and foregoing to the Court Clerk using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Richard J. (Rex) Burch | Michael A. Josephson |
| David I. Moulton | Andrew W. Dunlap |
| James A. Jones | Lindsay Rae Itkin |
| **BRUCKNER BURCH PLLC** | **JOSEPHSON DUNLAP LAW FIRM** |
| 8 Greenway Plaza, Suite 1500 | 11 Greenway Plaza, Suite# 3050 |
| Houston, Texas 77046 | Houston, Texas  77005 |
| Telephone: (713) 877-8788 | Telephone:  (713) 352-1100 |
| Telecopier: (713) 877-8065 | Telecopier: (713) 352-3300 |
| rburch@brucknerburch.com | mjosephson@mybackwages.com |
| dmoulton@brucknerburch.com | adunlap@mybackwages.com |
| jjones@brucknerburch.com | litkin@mybackwages.com |
| **ATTORNEYS FOR PLAINTIFFS** | **ATTORNEYS FOR PLAINTIFFS** |


*s/Madalene A.B. Witterholt, Pro Hac Vice*
Madalene A.B. Witterholt

3369610.2