# United States District Court
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LUTHER SANDERS and RANDY BEST, Individually and on Behalf of Others Similarly Situated | § § § § § | |
| v. | § | CASE NO. 3:16-CV-1093-S |
| LATSHAW DRILLING COMPANY, LLC | § § § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Latshaw Drilling Company, LLC's ("Defendant") Motion to Decertify the Collective Action [ECF No. 64]. For the following reasons, the Court grants the Motion.

## I. BACKGROUND

Pursuant to Special Order 3-318, this case was transferred from the docket of Judge Sidney A. Fitzwater to the docket of this Court on March 8, 2018.

This Fair Labor Standards Act ("FLSA") and New Mexico Minimum Wage Act ("NMMWA") action arises out of allegations that Defendant does not pay its oilfield mechanics overtime. First Am. Compl. ("Compl.") ¶ 1. Defendant, an Oklahoma-based drilling company, employed Plaintiffs Luther Sanders and Randy Best as top drive[1] technicians. *Id.* ¶¶ 7, 13. In this capacity, Sanders and Best repaired and maintained Defendant's top drive systems and other pieces of oilfield equipment. *Id.* ¶ 13. Sanders and Best allege that they regularly worked more than 40

---
[1] The top drive is a mechanical device on a drilling rig that provides clockwise torque to the drill string to facilitate the process of drilling a borehole. Mot. to Decertify 6. Put more simply, it is "the drill that drills the hole." *Id.* (quoting Def.'s App. 19).

hours per week. *Id.* ¶ 14. They typically worked a rotating schedule of ten days on and five days off and worked at least 12 hours per day. *Id.* Rather than paying Sanders and Best overtime, Defendant paid them a flat salary. *Id.* ¶ 15. According to Sanders and Best, Defendant knew that they worked more than 40 hours per week because their hours were reflected in Defendant's payroll records. *Id.* ¶ 18.

Sanders and Best brought this collective action on behalf of themselves and other employees that "perform oilfield mechanical work similar to Sanders and Best." *Id.* ¶ 20. Sanders and Best allege that the collective action members' primary duties are repairing and maintaining oilfield equipment. *Id.* ¶ 21. These employees also allegedly work more than 40 hours per week but do not receive overtime pay from Defendant. *Id.* ¶¶ 22-23. Defendant pays these employees on a salary basis. *Id.* ¶ 23. Defendant counters that the employees are not entitled to overtime compensation because they are exempt employees under the FLSA. Def.'s Mem. in Supp. of Mot. for Summ. J. 1 [ECF No. 67].

Sanders and Best defined the FLSA opt-in class as "[a]ll salaried oilfield mechanics employed by [Defendant] within the last three years." *Id.* ¶ 24. For purposes of the NMMWA, Sanders and Best defined the class as "[a]ll salaried oilfield mechanics employed by [Defendant] in New Mexico during the last three years." *Id.* ¶ 26. Sanders and Best, on behalf of themselves and the collective action members, bring causes of action for violations of the overtime provisions of the FLSA and the NMMWA.[2]

On September 12, 2016, Judge Fitzwater granted Sanders and Best's Unopposed Motion for Conditional Certification. *See* ECF No. 25. The parties agreed that the conditionally certified FLSA class would consist of "[s]alaried oilfield mechanical and electrical workers employed by

---

[2] Plaintiff Randy Best also brings a claim for unlawful retaliation, but that claim is outside the scope of the Motion to Decertify the Collective Action.

2

[Defendant] during the last three years." Mot. for Conditional Certification 1. Notice and consent forms were mailed to 36 potential class members. Mot. to Decertify 1. 11 employees opted in. Later, three of those 11 opted out. *Id.* Currently, there are eight members of the putative class. *Id.* The class includes top drive technicians, electricians, and mechanics.[3] *Id.* On August 24, 2018, Defendant moved to decertify the collective action. *See* ECF No. 64.

## II. LEGAL STANDARD

The FLSA generally requires that employers compensate their employees at overtime rates for all hours worked over 40 in a workweek. 29 U.S.C. § 207(a)(1). However, employers do not have to pay overtime to individuals "employed in a bona fide executive, administrative, or professional capacity" or to "highly compensated employees." *Id.* § 213(a)(1); 29 C.F.R. § 541.601.

The FLSA's overtime provisions authorize an employee to bring suit against his employer on behalf of both himself and other employees. 29 U.S.C. § 216(b). To bring a representative action, the plaintiffs must be "similarly situated" to one another. *See id.*; *see also Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008) (citing *Basco v. Wal-Mart Stores, Inc.*, No. Civ. A. 00-3184, 2004 WL 1497709, at *3 (E.D. La. July 2, 2004)).

Under the *Lusardi*[4] approach, which has been followed by courts in the Fifth Circuit, the similarly situated analysis proceeds in two stages. *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). The first stage is referred to as the notice stage. *Id.* At the notice stage, the court relies mainly on the allegations set forth in pleadings and affidavits and uses a fairly lenient standard to

---

[3] The collective action members are Sanders, Best, Kendall Bonner, Gary Favor, James Helenberger, Jason Hicks, Shane Spradlin, and Mike Stegall (collectively, "Plaintiffs").
[4] *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).

3

determine whether notice of the action should be given to potential class members. *Id.* at 1213-14; *see also Reyes v. Tex. EZPawn, L.P.*, Civ. A. No. V-03-128, 2007 WL 101808, at *2 (S.D. Tex. Jan. 8, 2007). If the district court conditionally certifies the class, putative class members are given notice and the opportunity to opt-in to the collective action. *Mooney*, 54 F.3d at 1214. The action then proceeds as a representative action throughout discovery. *Id.*

The second stage, known as the certification stage, is triggered when the defendant files a motion for decertification after discovery is largely complete. *Gomez v. Mi Cocina Ltd.*, Civ. A. No. 3:14-CV-2934-L, 2017 WL 3334106, at *3 (N.D. Tex. Aug. 4, 2017). At this stage, the court has more information and makes a factual determination as to whether the collective action members are similarly situated. *Mooney*, 54 F.3d at 1214. "Similarly situated" means that there is a "factual nexus [that] binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice." *Gomez*, 2017 WL 3334106, at *3 (quoting *Proctor*, 250 F.R.D. at 280). The burden is on the plaintiff to prove that the individual class members are similarly situated. *Proctor*, 250 F.R.D. at 280. The standard for proceeding as a collective action at the certification stage is more stringent than at the notice stage. *Gomez*, 2017 WL 3334106, at *3.

If the court finds that the putative class members are similarly situated, the collective action proceeds to trial. *Mooney*, 54 F.3d at 1214. If they are not similarly situated, the court decertifies the class and dismisses the opt-in plaintiffs without prejudice. *Id.* The class representatives proceed to trial on their individual claims. *Id.*

### III. ANALYSIS

In determining whether class members are similarly situated, a court may consider "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses

4

available to [defendant] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Portillo v. Permanent Workers, L.L.C.*, 662 F. App'x 277, 281 (5th Cir. 2016) (quoting *Mooney*, 54 F.3d at 1213-14, 1213 n.7). "The three factors are not mutually exclusive and there is considerable overlap among them." *Maynor v. Dow Chem. Co.*, 671 F. Supp. 2d 902, 931 (S.D. Tex. 2009) (quoting *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 574 (E.D. La. 2008)). In cases such as this one, where employers claim that employees are exempt from the FLSA's overtime requirement, "[t]he extent to which opt-in plaintiffs' work experiences differ directly influences [the defendant's] capacity to prove its statutory exemption defense[s]. In that sense, the first two factors are like two sides of the same coin." *Johnson*, 561 F. Supp. 2d at 574.

### A. *Plaintiffs' Factual and Employment Settings*

The first factor of the similarly situated analysis "assesses the opt-in plaintiffs' job duties, geographic location, supervision, and salary." *Reyes*, 2007 WL 101808, at *2 (citations omitted). Because Plaintiffs do not rely on a company-wide job description, the Court must look to their actual day-to-day job duties. *Id.* Defendant contends that "factual variations exist regarding the Plaintiffs' locations, job duties, and use of discretion."[5] Mot. to Decertify 15. Plaintiffs respond that they are similarly situated because "the duties that they did perform each day were in furtherance of their primary duty – to ensure the Latshaw drilling equipment remains operational . . ., perform preventative maintenance . . ., and to repair the rig equipment when broken." Resp. 4-5 (emphasis and internal citations omitted).

---

[5] Defendant also relies on discrepancies in Plaintiffs' reported and actual hours in support of its contention that Plaintiffs are not similarly situated. However, "distinctions must make a difference relevant to the legal issues presented." *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 227 (5th Cir. 2011). Because Plaintiffs' hours do not impact whether they are exempt, the Court did not consider Defendant's argument on this point in conducting its analysis.

5

In analyzing employees' job duties, courts look not only to the employer's classification of the employees, but also to the level of similarity in actual job performance. *Lipnicki v. Meritage Homes Corp.*, Civ. A. No. 3:10-CV-605, 2014 WL 5620603, at *3 (S.D. Tex. Nov. 4, 2014). Here, Defendant uniformly classified the employees in this case as exempt employees. Mot. to Decertify 1. However, "[a]bsent similarity in actual job performance, a uniform classification alone may be insufficient to meet the certification standard." *Lipnicki*, 2014 WL 5620603, at *3. In this case, as in *Lipnicki*, "[t]he record is replete with varying accounts of how the . . . job is performed." *Id.* at *4.

Plaintiffs' testimony reveals that their actual job performance differed in many ways. As an initial matter, there are three different job titles within the putative collective action. Six putative class members were top drive technicians, one was an electrician, and one was a mechanic. Plaintiffs with different job titles worked in different divisions, reported to different superintendents, and managed preventative maintenance for different parts of the rigs.

Although Plaintiffs contend that they were all manual laborers, their actual testimony as to whether their primary duty involved the performance of non-manual labor is a mixed bag. Spradlin, for example, testified that the amount of "neck up"[6] time and the amount of "hands on" time "varie[d] a lot." Spradlin Dep. 196:7-14.[7] Best testified that he was "[p]retty much" on the phone all the time and that he would troubleshoot with employees on the rigs over the phone to help them fix problems. Best Dep. 84:16-25. Sanders, by contrast, testified that, when his records reflected that he found out there was a problem, it was not because the rig called and told him. Sanders Dep. 168:6-16. Rather, he stated that he "probably went out there and took [the driller's

---

[6] The term "neck up" is not defined anywhere in the pleadings. However, the Court understands it to be the opposite of "hands on" work and to refer mainly to non-manual labor.
[7] All deposition testimony is cited from Defendant's Appendix in Support of Defendant's Motion to Decertify the Collective Action and Brief in Support [ECF No. 65].

6

console] apart and found the problem." *Id.* at 168:16-17. He then personally "[w]ent and got [a fuse," "[d]rove back out to the rig," installed the fuse, and "[p]ut everything back together." *Id.* at 168:18-20.

Further, Plaintiffs' testimony reveals discrepancies in the level of discretion each exercised. Some Plaintiffs testified that they were relatively free from supervision. *See, e.g.*, Best Dep. 56:21-57:4 (testifying that Best was not micromanaged while working for Defendant). Others testified that they did not make any decisions themselves. *See, e.g.*, Stegall Dep. 206:7-19 (testifying that Stegall was "pretty much" a puppet and did no independent decision making). *Compare* Bonner Dep. 138:5-17 (testifying that Bonner unilaterally refused wire delivery and then informed top drive superintendent, Jean Gallander, of his decision), *with* Sanders Dep. 183:23-25 ("I did a whole lot of calling Jean and saying this is what we got, what do you want me to do?").

In sum, while Plaintiffs attempt to gloss over the differences in their factual and employment settings, the evidence establishes that their job duties differed in several critical aspects. Other than global allegations that the FLSA was violated and that Plaintiffs primarily performed non-exempt work, there is little commonality among Plaintiffs in their actual day-to-day job duties.

### B. *Defenses*

The second factor of the similarly situated analysis "raises the issue of whether the potential defenses pertain to the opt-in class as a whole or whether many different defenses will be raised with respect to each individual plaintiff." *Reyes*, 2007 WL 101808, at *5 (citing *Moss v. Crawford & Co.*, 201 F.R.D. 398, 409 (W.D. Pa. 2000)). The district court has the discretion to determine whether the potential defenses would make the class unmanageable. *Id.* (citing *Moss*, 201 F.R.D. at 410).

7

Defendant maintains that it properly classified Plaintiffs as exempt employees and intends to assert the executive, administrative, and/or highly compensated employee exemptions. As in *Reyes*, Defendant plans to assert at least one of the three exemptions "depending on the individual circumstances of each [plaintiff's] case." *Id.* "The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the" criteria for the relevant exemption. 29 C.F.R. § 541.2. According to Plaintiffs, they are "manual laborers" and as such, "they cannot be exempt no matter how highly they are paid." Resp. 6. While the Court expresses no opinion on the merits of Plaintiffs' claims at this stage, the Court finds that the relevant statutory exemption criteria will require an individualized, fact-specific analysis of each top drive technician's, mechanic's, and electrician's job responsibilities. Because of the differences in Plaintiff's factual and employment settings, the Court cannot agree with Plaintiffs that they simply cannot be exempt.

As discussed above, Plaintiffs' testimony reveals discrepancies in whether their primary duty involved the performance of non-manual labor and in what job duties they actually performed. In the context of exemptions, an employee's primary duty is the employee's "principal, main, major or most important duty." 29 C.F.R. § 541.700. "As a general rule, an employee's 'primary duty' involves over 50% of the employee's work time." *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 331 (5th Cir. 2000). Given the variances in Plaintiffs' testimony about how much time was devoted to "neck up" versus "hands on" tasks, the Court will need to engage in individualized inquiries to determine each employee's primary duty. *See Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, 499 (D.N.J. 2000) ("Determining whether an employee's duty is administrative or productive . . . is extremely individual and fact-intensive, requiring 'a detailed analysis of the time spent performing administrative duties' and 'a careful

factual analysis of the full range of the employee's job duties and responsibilities.'" (quoting *Cooke v. Gen. Dynamics Corp.*, 993 F. Supp. 56, 59-61 (D. Conn. 1997))).

Plaintiffs highlighted the need for individualized analysis when they testified that every day, every rig, and every hitch[8] was different. *See, e.g.*, Favor Dep. 162:3 ("It wasn't the same thing every day . . . ."); Spradlin Dep. 190:22-23 ("I mean, there's no typical hitch."). The Court must conduct a fact-specific analysis of each employee's job responsibilities to determine which, if any, exemptions apply.

Plaintiffs' testimony also reveals that they exercised differing degrees of discretion and authority. This discrepancy is highly relevant to the exemption analysis, as the administrative exemption requires, inter alia, that the employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3). The highly compensated employee exemption analysis, by contrast, does not contain this requirement. *Id.* § 541.601. Thus, the level of discretion exercised by each employee directly impacts (1) whether an exemption applies at all, and (2) which exemption(s) apply. Because Plaintiffs testified that they possessed varying levels of discretion and authority, the Court will have to perform individualized analyses. *See Reyes*, 2007 WL 101808, at *5 ("[T]he degree of discretion and authority each [employee] exercised varied . . ., making this case particularly unsuitable for collective treatment when applying exemption analysis.").

In sum, the individualized defenses required for each Plaintiff weigh against certification.

### C. *Fairness and Procedural Considerations*

The third and final factor "evaluates fairness and procedural considerations against the backdrop of the two purposes of an FLSA collective action: (1) to ease the burden on similarly

---

[8] Each Plaintiff worked a rotation of ten days on and five days off. This rotation is commonly referred to as a "hitch." *See* Spradlin Dep. 190:1-3; Reid Dep. 56:1-3.

9

situated plaintiffs, and (2) to ease the burden of duplicative claims on the judicial system." *Nguyen v. Versacom, LLC*, Civ. A. No. 3:13-CV-4689-D, 2016 WL 6650860, at *6 (N.D. Tex. Nov. 9, 2016) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

This is not a case involving "hundreds, or even dozens" of individual plaintiffs, and decertifying the collective action will not "result in an exponential growth in costs." *Snively v. Peak Pressure Control, LLC*, 314 F. Supp. 3d 734, 743 (W.D. Tex. 2018) (quoting *Vanzzini v. Action Meat Distribs., Inc.*, 995 F. Supp. 2d 703, 723 (S.D. Tex. 2014)). There are eight class members, and only six members' claims will be dismissed when the class is decertified. While combining these cases together likely would conserve Plaintiffs' expenses and judicial economy, such benefits are only realized when the cases are similarly situated. *See Vanzzini*, 995 F. Supp. 2d at 723. Because these cases are not similarly situated, it is not clear that combining all of Plaintiffs' claims in one action would "efficiently resolve[] common issues of law and fact that arose from the same alleged activity." *Id.* (quoting *Mahoney v. Farmers Ins. Exch.*, Civ. A. No. 4:09-cv-2327, 2011 WL 4458513, at *10 (S.D. Tex. Sept. 23, 2011)). Therefore, the Court is of the opinion that fairness and procedural considerations weigh in favor of decertifying the class.

As a final note, Plaintiffs argue that Defendant "has already conceded in its Motion for Summary Judgment . . . that Plaintiffs' claims and [Defendant's] defenses can be decided as a matter of law *despite* the difference [Defendant] identifies in its decertification motion." Resp. 3. The Court is not convinced that Defendant has made any such concession. And, regardless of the claims Defendant made in its summary judgment motion, it is the Plaintiffs' burden to show that they are similarly situated. Based on the foregoing analysis, the Court finds that Plaintiffs have not met this burden.

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendant's Motion to Decertify the Collective Action. All claims filed herein by opt-in Plaintiffs are dismissed without prejudice. To avoid prejudice to individual opt-in Plaintiffs, the Court invokes its equity powers to toll the applicable statute of limitations for 30 days after the entry of this Order. The claims of Best and Sanders remain pending herein for trial.

**SO ORDERED.**
SIGNED March 14, 2019.

_____
**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**